# STATE OF VERMONT

| SUPERIOR COURT<br>Vermont Unit | ENVIRONMENTAL DIVISION<br>Docket No. 123-9-13 Vtec |
|---|---|
| Moore 3 Lot Subdivision | DECISION ON MOTION |

## Decision on Motion to Dismiss and Cross-Motions for Summary Judgment

James and Mia Moore (the Moores) seek to subdivide the 6.27-acre parcel they own at 18 Leap Frog Hollow Road in the City of Montpelier, Vermont. The Moores' subdivision application was approved by the Montpelier Development Review Board (the DRB) by written decision dated August 19, 2013. A neighboring property owner, James Nagle, timely appealed that decision to this Court. The Moores, through their attorney Daniel Burke, Esq., move to dismiss certain of Mr. Nagle's questions on appeal and for summary judgment on the remaining questions contained in Mr. Nagle's Amended Statement of Questions. Mr. Nagle, representing himself, cross-moves seeking "dismissal of the application" and a remand to the DRB for further proceedings.[1]

## Factual Background

For the sole purpose of putting the pending motions into context, we recite the following facts which we understand to be undisputed unless otherwise noted:

1.  James and Mia Moore purchased a 6.27-acre parcel of land on Leap Frog Hollow Road in the City of Montpelier in May 2012.

2.  The 6.27-acre parcel was one part of a larger parcel owned by Mr. Nagle. Mr. Nagle subdivided this larger parcel into three lots; Lot 1 was and still is owned by Mr. Nagle; Lot 2 was owned by the Moores' predecessor in interest, Dejung Gewissler; and Lot 3 was then and still is owned by Na An.

---

[1] While titled a motion to dismiss, Mr. Nagle's motion includes a statement of undisputed material facts and seeks judgment in his favor as a matter of law. As such, we treat it as a motion for summary judgment under Vermont Rule of Civil Procedure 56.

3. Mr. Gewissler further subdivided Lot 2 into Lots A and B, with Lot A being 1.04 acres and Lot B being 6.27 acres. Mr. Gewissler conveyed Lot B to the Moores and that is the subject lot they seek to further subdivide.

4. On June 18, 2013, the Moores submitted an application for a subdivision permit with the City of Montpelier Development Review Board (the DRB). The application is to subdivide Lot B into three lots: a new Lot B of 2.96 acres, Lot B1 of 2.04 acres, and Lot B2 of 1.27 acres. The plans accompanying the application depict locations of single-family residences, garages, driveways, wells, and water and sewer lines. The Moores did not, however, apply for any development or construction permits other than approval to subdivide their lot.

5. The plans also depict the grade of the land, a pond, several streams, and an unused spring.

6. The plans also depict Leap Frog Hollow which undisputedly provides access to the subject parcel. An easement was conveyed to Mr. Gewissler, his heirs and assigns, for use of Leap Frog Hollow for access and utilities at the time of Mr. Nagle's initial subdivision. The parties do not dispute the location of the easement, but Mr. Nagle argues that the scope of the easement is limited to serving only four houses.

7. The DRB scheduled a hearing on the application for July 15, 2013. Notice of the hearing was posted at two locations within the City Hall Building, in a public location at Montpelier High School, and at the subject property. Notice of the hearing was also published in the Barre-Montpelier Times Argus newspaper on or about June 27, 2013. Mr. Nagle, as an abutting land owner, received actual written notice of the hearing on July 2, 2013.

8. The DRB held the hearing as scheduled. Mr. Nagle appeared at the hearing and provided written opposition to the application.

9. The DRB approved the application with conditions by written decision dated August 19, 2013.

10. Prior to the subdivision application, the Moores entered into purchase and sale agreements with two sets of prospective buyers for the proposed lots. The agreements

2

were contingent on the subdivision approval from the City and the Moores had no obligation to sell until the subdivision was approved.

11. The Moores' parcel is accessed through a shared right-of-way that serves the other three lots (Lots 1 and 3 from the Nagle subdivision and Lot A from the Gewissler subdivision).

## Discussion

Now pending before the Court are three motions: first, the Moores move to dismiss certain of Mr. Nagle's questions on jurisdictional grounds; second, the Moores move for summary judgment on the remaining questions which they do not seek to have dismissed; finally, Mr. Nagle also moves for judgment as a matter of law that the Moores failed to comply with requirements of the City of Montpelier Zoning and Subdivision Regulations (the Regulations) and requesting that the Court remand the application for further proceedings before the DRB.

## Standard of Review

The Moores move to dismiss a number of Mr. Nagle's Questions as outside the Court's subject matter jurisdiction. Vermont Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. In reviewing such motions, we accept as true all uncontroverted factual allegations and construe them in a light most favorable to the nonmoving party (here, Mr. Nagle). Rheaume v. Pallito, 2011 VT 72, ¶ 2, 190 Vt. 245.

On all Questions for which the Moores do not seek dismissal they seek summary judgment in their favor. Mr. Nagle also seeks judgment in his favor and we review his motion as a cross-motion for summary judgment. Motions for summary judgment are governed by V.R.C.P. 56. We will only grant summary judgment if a moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). When considering cross-motions for summary judgment, the court looks at each motion individually and gives the opposing party the benefit of all reasonable doubts and inferences. City of Burlington v. Fairpoint Commc'ns, Inc., 2009 VT 59, ¶ 5, 186 Vt. 332. We also accept as true all factual allegations made in opposition to a motion for summary judgment so long as they are supported by "specific citations to particular parts of materials in the record . . . ." V.R.C.P. 56(c)(1)(A). We note that neither Mr. Nagle nor the Moores

3

responded to the other party's statement of facts indicating whether the facts were disputed or not as required by Rule 56. The Court will therefore only treat as disputed those facts that are contradicted by the other party's Statement of Facts.

**Questions 1 and 2 – Notice to Adjoining Landowner**

Questions 1 and 2 of Mr. Nagle's Statement of Questions relate to sufficiency of the notice of the hearing on the application and state as follows:

1. Pursuant to Article 206(A)(3) of the City of Montpelier Zoning & Subdivision Regulations, did the appellees/applicants notify all adjoining landowners of the subject property at the time of the original Montpelier Development Review Board (DRB) hearing?

2. Pursuant to Article 206(C) of the City of Montpelier Zoning & Subdivision Regulations, does inadequate notice require this action be remanded to the DRB to provide new posting and notice, hold a new hearing, and take a new action?

The Regulations require that notice be published in a newspaper of general publication and public posting in three or more public places not less than 15 days prior to the date of the hearing. Regulations § 206.A(1)–(2). It is not disputed that these requirements were met with the Moores' application. The Regulations also require that not less than 15 days before the hearing written notice be provided to the applicant and to any record owners of property adjoining the property subject to development. Regulations § 206.A(3). Mr. Nagle alleges that certain adjoining landowners did not receive written notice of the DRB hearing although he admits that he, himself, did receive written notice, albeit only 13 days prior to the hearing. It is undisputed that Mr. Nagle appeared before the DRB and submitted written opposition to the Moores' subdivision application. Mr. Nagle primarily argues that the failure to provide written notice to other adjoining property owners requires this Court to remand the proceedings so that the DRB can hold a new, properly noticed, hearing. Mr. Nagle does not have standing to raise this claim.

This Court's jurisdiction is limited to "actual cases or controversies." Parker v. Town of Milton, 169 Vt. 74, 76–77 (1998). Whether a case or controversy exists turns partially on whether the party bringing a claim has standing to do so. Id. at 77. Standing is a "necessary component to the court's subject-matter jurisdiction." Bischoff v. Bletz, 2008 VT 15, ¶ 15, 183 Vt. 235. When parties lack standing, courts lack the authority to render decisions. In order to

4

have standing a party must have suffered the injury alleged. "[A] general prohibition on a litigant's raising another person's legal right" is "one of the fundamental principles underlying the standing requirement . . . ." Id. at ¶ 21. Both the Legislature and the drafters of the Montpelier Zoning and Subdivision Regulations provided that certain classes of people are entitled to notice of hearings on land use applications. 24 V.S.A. § 4464; Regulations § 206.A. Mr. Nagle is entitled to assert his own right to notice but he does not have standing to raise the rights of others.

Mr. Nagle also alleges that he only received notice 13 days in advance of the hearing rather than the required 15 days. It is undisputed, however, that Mr. Nagle appeared before the DRB and therefore suffered no injury. Finally, the Regulations specifically state that "[n]o defect in the form or substance of any [notice requirements] shall invalidate the action of the Development Review Board where reasonable efforts are made to provide adequate posting and notice." Regulations § 206(C). Viewing the facts presented by Mr. Nagle as true and considering them in the light most favorable to him, the Moores made reasonable efforts to provide adequate notice. Thus, we GRANT the Moores' motion for summary judgment with regard to questions 1 and 2 and those questions are DISMISSED.

**Questions 3 and 4 – Offer to Sell Prior to Subdivision Approval**

Mr. Nagle's Questions 3 and 4 ask:

3. Pursuant to Article 203(C) of the City of Montpelier Zoning & Subdivision Regulations, final subdivision approval must be obtained prior to offer of sale of any lot.
   a. Is the appellant adversely prejudiced because the appellees/applicants have entered into one or more purchase/sale contracts for the subdivision lots that are the subject of this appeal, before a permit for such subdivision was issued?
   b. Does such adverse prejudice enjoin the appellees/appellants [sic] from enforcing the DRB Notice of Decision?

4. Does the Violation of Article 203(C) of the City of Montpelier Zoning & Subdivision Regulations by the appellees/applicants make the DRB Notice of Decision null and void or, in the alternative, require the this [sic] action to be remanded to the DRB to hold a new hearing and take a new action?

It is undisputed that the Moores entered into purchase and sale agreements for the proposed lots prior to the final subdivision approval. Section 203.C of the Regulations states: "Division of land into two or more lots requires subdivision approval issued according to the

5

provisions of Article 4.  Final subdivision approval must be obtained prior to offer of sale of any lot."  Article 4, however, contains no requirement in the review of subdivision applications related to offering the proposed lots for sale.  Thus, in our de novo review of the Moores' subdivision application, the violation of § 203.C is irrelevant, as it is not grounds for denial of the application.  An alleged violation of the Regulations, unrelated to the standards governing the application before us (here, Article 4), is not grounds for denial of the application but could be the subject of an action by the City against the alleged violator.  Thus, even assuming that the Moores violated § 203.C, because Mr. Nagle is not entitled to the relief he seeks we GRANT the Moores' motion for summary judgment on Questions 3 and 4 and those questions are DISMISSED.

**Questions 5 and 6 – Materials Submitted to the DRB**

Questions 5 and 6 of Mr. Nagle's Statement of Questions each relate to the adequacy or accuracy of materials submitted to the DRB.  Question 5 asks whether the DRB "lack[ed] subject matter jurisdiction to hear the appellees/applicants subdivision application," whether as a result the DRB was precluded from deciding the application, and whether the DRB decision approving the application is therefore "null and void," if the plans submitted to the DRB failed to accurately depict and describe easements or rights-of-way.  Question 6 asks the same questions related to an alleged failure to fully or accurately depict natural resources on the plans submitted to the DRB.

Pursuant to the Vermont Rules for Environmental Court Proceedings, an interested person appealing a municipal panel decision is entitled to a de novo trial in this Court.  V.R.E.C.P 5(g).  "A de novo trial 'is one where the case is heard as though no action whatever has been held prior thereto.'"  Chioffi v. Winooski Zoning Bd., 151 Vt. 9, 11 (1989) (quoting In re Poole, 136 Vt. 242, 245 (1978)).  This Court does not consider any previous decisions or proceedings below; "rather, we review the application anew as to the specific issues raised in the statement of questions."  In re Whiteyville Props. LLC, No. 179-12-11 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Dec. 13, 2012) (Durkin, J.).  We will therefore not review the accuracy or adequacy of the materials submitted to the DRB.  Alleged shortcomings in those materials are not grounds for denial of the permit application.  All materials submitted to this Court in this de novo proceeding must be complete and accurate and comply with the requirements of the

6

Regulations. As Questions 5 and 6 relate entirely to the materials submitted to the DRB, they are not relevant and are outside the scope of this appeal. We therefore GRANT the Moores' motion for summary judgment with regard to Questions 5 and 6 and those Questions are DISMISSED.

**Questions 7–11 – Easement/Right of Way Providing Access to the Subdivision**

Question 7–11 of Mr. Nagle's Statement of Questions all relate to the easement or right of way that provides access to the subject parcel. Questions 7 and 8 ask: "[i]f there are material and significant questions about an easement or right of way to the subject parcel at the time of the original DRB hearing," are the Moores required to either "cure such questions prior to filing their subdivision application" or "prior to completing the DRB subdivision process?"

These two Questions also relate entirely to the proceeding below and are therefore not germane to this de novo proceeding. More importantly, however, questions related to interpretation or adjudication of private property rights are outside this Court's subject matter jurisdiction.

Municipal regulations often require an applicant to have a sufficient ownership interest or legal access in order to develop a property. In such cases this Court must ensure compliance with the regulations but may not adjudicate private property rights. See In re Britting Wastewater/Water Supply Permit, No. 259-11-07 Vtec, slip op. at 4 (Vt. Envtl. Ct. Apr. 7, 2008) (Wright, J.). We have, therefore, only required an applicant to "satisf[y] a threshold burden that it has authority to use the property it seeks to develop" and will not "adjudicate possible real property disputes . . . ." In re Town of Charlotte Recreation Trail, No. 9-5-08 Vtec, slip op. at 13–14 (Vt. Super. Ct. Envtl. Div. Feb. 14, 2011) (Durkin, J.). Questions 7 and 8 raise the type of real property dispute that is outside our jurisdiction.

Question 9 asks "[h]ow long is the easement or right of way on Leap Frog Hollow that was conveyed by the deed for the subject property?" Question 10 asks "[d]oes the deed for the conveyance of the right of way on Leap Frog Hollow limit the right of way to one house site for the subject property?" Question 11 asks "[i]s the increase of house sites from one to three house sites for the subject property a substantial, material change from the definition of the right of way contained in the deed?" These three questions, as with Questions 7 and 8, are

about a real property dispute over an alleged limitation on the scope of the easement or right of way for the subject parcel.

The Moores and Mr. Nagle all submit documents which undisputedly show the existence of an easement for driveway and utility purposes serving the lot the Moores seek to subdivide. That easement was granted to the Moores' predecessor in interest, Mr. Gewissler and his heirs and assigns. This shared easement is depicted in the same location in the plans submitted in the two prior approved subdivisions by Mr. Nagle and Mr. Gewissler. On the undisputed facts before the Court, the Moores have met the initial burden of establishing a legal access to the property. To the extent that Mr. Nagle argues that the grant of that easement should be read to contain limitations on its use, he asks this Court to adjudicate private property rights and settle a real property dispute, something we cannot do. For these reasons, the Moores' motion to dismiss or for summary judgment on Questions 7–11 of Mr. Nagle's Statement of Questions is GRANTED and those questions are DISMISSED.

**Question 12 – Natural Resources on the Site**

Mr. Nagle's Question 12 asks: "Have appellees/applicants accurately represented the streams, watercourses and other natural features on their survey for the proposed development?"

While Question 6 was related entirely to the plans submitted to the DRB, this question asks whether the application on appeal complies with the requirements of the Regulations. Table 401 of the Regulations established submission requirements for an application for subdivision or planned development review. It is broken down into Sketch Plan, Preliminary Plan, and Final Plan sections. For a subdivision application, the preliminary plan must:

> delineate significant natural resources; wetlands; shoreline management areas; water courses; rare, threatened or endangered plant and animal species; geological sites; historic sites; scenic roads; agricultural lands; open spaces; view sheds; streams; bodies of water; woodlands; flood hazard areas; slopes with gradients greater than 20%; south-facing slopes; significant trees; significant wildlife habitats; wellhead protection areas; and ridge lines.

This is not additionally required at the Final Plan review stage, but every subdivision must go through both preliminary and final plan review. Mr. Nagle's Question 12, unlike Question 6, can be read to ask whether the Moores have included such delineation in the application materials now before this Court.

8

The Moores move for summary judgment arguing that because the delineation of environmental features is not part of the final plan review and it is the final subdivision approval that is on appeal, the question does not raise a legal issue relevant to the pending appeal. This, however, ignores the fact that the decision approving the Moores' subdivision was a joint decision for both Preliminary and Final subdivision review and approval. "The reach of the superior court in zoning appeals is as broad as the powers of a zoning board of adjustment or a planning commission, but it is not broader." In re Torres, 154 Vt. 233, 235 (1990). Thus, an issue that was before the DRB and that is properly raised in the Statement of Questions is within the scope of this Court's jurisdiction. In considering a subdivision application, the Regulations direct that the DRB, and therefore this Court on appeal, "may consider and impose appropriate conditions and safeguards with respect to the subdivision's or planned development's conformance with the general development standards of Article 7." Regulations § 407.E. Section 715(A) of Article 7 of the Regulations requires consideration of impacts on natural resources. To the extent that the subdivision layout could impact these natural resources, the proper delineation and description of the resources is material to determining whether the application should be approved. Because there is a material dispute of fact regarding what environmental resources exist on the site and whether the Moores' application accurately delineates those resources, we DENY the Moores' motion for summary judgment as to Question 12.

In his cross-motion, Mr. Nagle asks that the Court remand the matter to the DRB for further proceedings. We conclude that this matter does not need to be remanded. As noted above, the scope of the Court's jurisdiction is a broad as that of the DRB. Where an applicant suggests "truly substantial changes to the form or type of an application" a remand is required. In re Sisters & Brothers Inv. Grp., 2009 VT 58, ¶ 21, 186 Vt. 103. Applicants are not barred, however, "from presenting minor revisions to the Environmental Court in response to concerns expressed by interested parties" because otherwise review of land use applications "would become a procedural ping-pong match: any change would result in a remand for municipal consideration, followed by another appeal to the Environmental Court." Id. The Moores therefore have the opportunity to amend the plans to include any environmental features

alleged to be absent from the plans, as this will not create a substantial change to the form or type of application before the Court.

**Question 13 – Impacts of Future Development**

Mr. Nagle's Question 13 asks "[d]o the proposed subdivision lots adversely affect adjoining landowners in that the building of single family residences, driveways and accessory buildings on these lots create impervious surfaces and additional storm water drainage?"

The application before the Court is for the subdivision of the parcel and not for the creation of any impervious surfaces such as buildings or driveways. The creation of new lots for future development can certainly lead to impacts on neighbors. As such, the Court can consider whether the layout of the lots and the proposed locations of the houses and driveways will adversely affect neighbors. These buildings and drives are, however, only proposed. The Moores, or the buyers of the subdivided lots, will need to comply with any applicable provisions of the Regulations when they seek to actually construct the proposed development. Thus, because the creation of impervious surfaces is not part of the application before the Court, Mr. Nagle's Question 13 is outside the scope of the Court's review. We therefore GRANT summary judgment to the Moores on Question 13 and that Question is DISMISSED.

**Questions 14 and 15 – Road Frontage and Traffic**

Mr. Nagle's Questions 14 asks "[d]oes each proposed subdivision lot require a minimum of 200 feet of frontage on Leap Frog Hollow?" While this Question is worded to ask only for a legal conclusion, we read it to ask whether the proposed subdivision lots meet the road frontage requirements of the Regulations.

Section 607 of the Regulations governs lot size, setbacks, lot coverage, and height regulations. Table 607 sets out the minimum required road frontages in each zoning district. In the property's zoning district, the Low Density Residential district, the Regulations require 200 feet of road frontage for a lot that has on-site water or sewer. It is undisputed that all three proposed lots have on-site water or sewer, and therefore, each lot would generally require 200 feet of road frontage. It is undisputed that Lots B and B1 meet this requirement. It is unclear whether Mr. Nagle disputes the road frontage for Lot B1. If he does, he has provided no evidence to support such a dispute. The Moores, on the other hand, submit a professional survey depicting the proposed lots which clearly shows 200 feet of road frontage for Lot B1.

10

Lot B2 undisputedly does not have 200 feet of road frontage. Regulations § 607(A) allows for the development of lots without the required frontage provided there is access to the road by a permanent easement of right-of-way at least 20 feet in width with DRB approval. The survey submitted by the Moores depicts a 50-foot easement for access to Leap Frog Hollow, as well as utilities, for the benefit of Lot B2 over Lot B1. Mr. Nagle has provided nothing to indicate that he disputes the location of this easement. Thus, as Lot B2 will undisputedly have access to Leap Frog Hollow by way of an easement at least 20 feet in width, the Court concludes as a matter of law that Lot B2 does not require 200 feet of road frontage. We therefore GRANT the Moores' motion for summary judgment on Question 14.

Question 15 asks "[d]o the appellees/applicants need to address the increase in traffic that the proposed subdivision lots will create on Leap Frog Hollow?"

The Regulations general development standards, § 704, governs "Vehicular Access and Circulation," and those standards are considered by the DRB in both preliminary and final subdivision approval. Regulations §§ 406.D, 407.E. These "general standards" are applicable to all types of development and must be applied reasonably to each type of application. See In re Laberge Moto-Cross Track, 2011 VT 1, ¶ 8, 189 Vt. 578 (mem.) (noting that in construing zoning regulations the court will consider legislative purpose and "apply common sense"). In the context of a planned unit development or site plan review, to name two examples, a detailed look at traffic may be required. Here the application is for a three-lot subdivision on a small residential road in the low-density residential zoning district. While an increase from one single-family residence to three single-family residences will technically create an increase in traffic, no traffic study is required and the Moores need not address the increase in traffic in the review of the subdivision application. Requiring a formal traffic study for a subdivision application of the nature before the Court would lead to absurd results. See In re Pierce Subdivision Application, 2008 VT 100, ¶ 8, 184 Vt. 365 (holding that courts should avoid interpretations that lead to absurd results).

Section 704.A provides that the layout of driveways should provide for adequate site distances and should avoid "movement conflicts with other nearby driveways." Regulations § 704.A. This is the type of access and circulation regulation that may reasonably apply in subdivision review. On the undisputed facts before the Court, even viewed in the light most

11

favorable to Mr. Nagle, we conclude that the Moores do not need to address increases in traffic as part of their three-lot subdivision application. We therefore GRANT the Moores' motion for summary judgment on Question 15 which only asks about an increase in traffic.

## Conclusion

The Moores' motion to dismiss or in the alternative for summary judgment on all questions is **GRANTED** in part and Questions 1–11 and 13–15 of Mr. Nagle's Statement of Questions are DISMISSED. The Moores' motion to dismiss Question 12 is **DENIED** as a material dispute of facts exists regarding whether the Moores' application meets the requirements of the Montpelier Zoning and Subdivision Regulations related to the delineation of environmental resources. Mr. Nagle's motion for summary judgment on Question 12 is also **DENIED** for that reason. Finally, Mr. Nagle's request that the application be remanded to the DRB is **DENIED** for the reasons described above.

Electronically signed on July 28, 2014 at 11:54 AM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division

12