# In re Richard Scheiber

[724 A.2d 475]

No. 97-150

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed December 24, 1998

*Matthew C. Colburn, Law Office of Richard A. Unger*, Montpelier, for Appellant.

*Glenn C. Howland* of *McKee, Giuliani & Cleveland, P.C.*, Montpelier, for Appellees.

**Amestoy, C.J.** Petitioner Richard Scheiber appeals from a Washington Superior Court order concluding that respondents Fred and Leonia Pike, neighbors of Scheiber, need not obtain a zoning permit

to use a shooting range on their property. Scheiber claims that the town zoning regulations prohibited such use, or, in the alternative, required a permit for continued use. We affirm.

Scheiber and the Pikes live in Cabot, about one-half mile from each other, in an area zoned as a low density residential and agricultural district. In 1989, the Pikes created a shooting range on their property by removing approximately ten trees, moving topsoil to fashion an earthen backstop or berm, and erecting a small platform. The completed range was approximately thirty feet wide by one hundred yards long, and could accommodate up to four people at a time. The superior court found that the Pikes used the range sporadically, primarily for family use, but that the use had increased, especially on weekends. On three occasions, they used the range in connection with a rifle safety course for the benefit of the local chapter of the American Pistol and Rifle Association (APRA), and the APRA chapter held four annual picnics at the range.

In August 1991, Scheiber complained to the Cabot zoning administrator that the Pikes' use of their land violated the Town and Village of Cabot zoning regulations. His concern was based primarily on the fact that the weapons were fired in the general direction of his house and that the resulting noise created a disturbance. The zoning administrator found no violation of the regulations. Scheiber appealed to the zoning board of adjustment, which affirmed the zoning administrator's decision.

Scheiber then appealed to the Washington Superior Court, which reviewed the case de novo pursuant to 24 V.S.A. § 4472(a). The court characterized the firing range as a "private accessory residential use" which did not implicate the zoning regulations, and, therefore, did not require a permit. This appeal followed.

We review the trial court's ruling for clear error. See *Route 4 Assocs. v. Town of Sherburne Planning Comm'n*, 154 Vt. 461, 462, 578 A.2d 112, 113 (1990). Scheiber argues, in the alternative: (1) that the shooting range constituted "land development" requiring a permit under state law; (2) that the range required a conditional use permit (CUP) as either a "private club" or "accessory use" within the meaning of the zoning regulations; (3) that even if it did not require a CUP, the range constituted a "private recreational use" requiring a zoning permit; and (4) that if the range did not fall within any of the foregoing categories, it was by definition a prohibited use under § 1.3 of the zoning regulations, which states that "[a]ny use not permitted by these Regulations shall be deemed prohibited." Town and Village

of Cabot Zoning Regulations § 1.3. We address each of these arguments in turn.

Scheiber first contends that the range constituted land development requiring a permit under state law. The contention is unpersuasive. Pursuant to 24 V.S.A. § 4443(a)(1), "[n]o land development may be commenced [within any municipality having adopted zoning regulations] within the area affected by such zoning regulations without a permit therefor issued by the administrative officer." The term "land development" is defined as the "construction, reconstruction, conversion, structural alteration, relocation or enlargement of any building or other structure . . . and any change in the use of any . . . structure, or land, or extension of use of land." 24 V.S.A. § 4303(3). The statute defines "structure" as an "assembly of materials" for use, including but not limited to a wall or fence. 24 V.S.A. § 4303(11). Based on the evidence that the Pikes had cut ten trees and constructed a backstop and a shooting stand, the trial court could reasonably conclude that the Pikes had not created a structure or changed the use of their land within the meaning of the statute. Accordingly, the court's conclusion must be upheld. See *Secretary v. Handy Family Enters.*, 163 Vt. 476, 485, 660 A.2d 309, 314 (1995)(we set aside trial court conclusions only if not reasonably supported by findings).

Scheiber next contends that the shooting range constituted either an "accessory use" or a "private club" requiring a CUP under the zoning regulations.[1] We disagree. The zoning regulations define an "accessory use or building" as "[a] use or building customarily incidental and subordinate to the principal use or building and located on the same lot." Town and Village of Cabot Zoning Regulations, art. I, § 1.8. Each of the uses identified as requiring a CUP involves a very substantial alteration in land use, such as a sand and gravel operation, junkyard, and retail store. Inclusion of "accessory use" in this list suggests that the town contemplated a "subordinate" use or building having a substantial impact on the property, such as a

---

[1] The following uses are allowed in the Pikes' district upon issuance of a conditional use permit: (1) sand and gravel operation, (2) junkyard, (3) motel, hotel, lodge, (4) dormitory use, (5) private club, (6) membership clubhouse, (7) retail store, (8) office building, (9) restaurant, (10) public utility substation, (11) automotive service station and garage, (12) drive-in stand, (13) trailer camp, (14) accessory use, (15) any other commercial or industrial use not specifically excluded, (16) temporary residence for the purpose of cutting or handling timber. See Town and Village of Cabot Zoning Regulations, art. IV, § 4.3.

separate garage or other sizable and permanent auxiliary structure. See *Langle v. Kurkul*, 146 Vt. 513, 515, 510 A.2d 1301, 1302 (1986) (when enumerated list in statute is followed by general term, general term must be construed to include only those terms which are similar in nature to enumerated terms). Indeed, accessory uses have traditionally involved such various activities as home occupations, tennis courts, and airplane hangers. See 2 E. Ziegler, Rathkopf's The Law of Zoning and Planning § 23.08 (4th ed. 1991) (providing rulings on a variety of accessory uses); 2 E. Yokley, Zoning Law and Practice § 8-4, at 24 (4th ed. 1978) (providing rulings on what constitutes permissible accessory uses).[2] The range at issue, consisting of an earthen berm and small platform, is easily distinguishable.

■ Scheiber also argues that the Pikes' use of their property constituted a "private club," thereby requiring a CUP. The zoning regulations define private club as a "[b]uilding or use catering *exclusively* to club members and their guests for recreational purposes, and not operated primarily for profit." See Town and Village of Cabot Zoning Regulations, art. I, § 1.8 (emphasis added). Scheiber relies on the court's findings that members of the APRA had used the range, and that the range was used at APRA functions. The court found that the APRA chapter had four annual picnics attended by approximately forty-five guests, and that the range has been the site of an APRA safety course on three occasions. Further, the trial court found that due to the Pikes' involvement with the APRA, use of the range had increased. The court also determined, however, that ordinarily no shooting occurs at the meetings, and that the APRA's use of the range had not increased to the point that the property had become a club facility. Thus, the court concluded that the shooting range did not cater exclusively to club members, and, therefore, was not a private club. The evidence supports these findings and conclusions. See *Handy Family Enters.*, 163 Vt. at 485, 660 A.2d at 314.

■ Scheiber next contends the range constituted "private outdoor recreation" under the zoning regulations, thereby requiring a

---

[2] Scheiber also notes that the court characterized the range as a "private accessory residential use." As explained below, however, it does not appear that the court intended to characterize the range as an "accessory use" in the technical sense, but rather as a de minimis recreational use which did not require either a zoning permit or a CUP.

zoning permit.[3] The regulations define private outdoor recreation as a "yacht club, golf course, trap, skeet and archery range, swimming pool[,] skating rink, riding stable, park, lake, and beach, tennis court, recreation stadium and skiing facility." See Town and Village of Cabot Zoning Regulations § 1.8. These uses suggest more fully developed facilities, with more extensive and ongoing use, than the shooting range at issue here. The court found that the range is used primarily by the Pike family and their friends, and that they had not been so "generous in their permission" to others to warrant a permit. Thus, the court reasonably concluded that the shooting range was not a form of private outdoor recreation as described by the zoning regulations.

■ Finally, Scheiber contends that if the range did not constitute one of the aforementioned uses requiring either a zoning permit or CUP, then it was not specifically permitted by the zoning regulations and therefore was expressly prohibited. See Town and Village of Cabot Zoning Regulations § 1.3. The claim is unpersuasive. Certain recreational uses of private property plainly fall outside the rudiments of zoning. The primary purpose of zoning is to manage municipal and regional growth and development in an organized fashion, not to regulate the incidental recreational activities of private property owners. See 24 V.S.A. § 4302(a) (purpose of Vermont Development Act to encourage appropriate municipal and regional development). As one court observed:

> it could not be seriously contended that it is a violation of the zoning ordinance for one to erect a shuffle-board or a badminton court in his own yard for the use and enjoyment of himself, his family and friends, or that it is illegal for children to engage in their various games and amusements in the yards of their homes.

*City of New Orleans v. Estrade,* 8 So. 2d 536, 537 (La. 1942). Use of residential property includes more than the use of a house and grounds for food and shelter. Rather, "[i]t also includes its use for private religious, educational, cultural and *recreational* advantages of the family. Pursuit of a hobby is clearly customarily a part of

---

[3] Under the town's zoning regulations, "private outdoor recreation is included among the allowed uses in a low density residential/agricultural district. Town and Village of Cabot Zoning Regulations § 4.3.

recreational activities." *Borough of Chatham v. Donaldson*, 174 A.2d 213, 216 (N.J. Super. Ct. App. Div. 1961) (citation omitted).

Because Cabot is a rural community, the opportunity to pursue private recreational activities on one's land, such as sport or target shooting, is greater than in more residential areas of the state. Nevertheless, Cabot is empowered to regulate recreational shooting activities through its zoning authority, and indeed has chosen to regulate trap and skeet shooting and archery ranges, while remaining silent about target shooting of the kind at issue here. See Town and Village of Cabot Zoning Regulations §§ 1.8(10), 4.3. It is also empowered to establish performance standards, including noise abatements, for specific uses, but has not chosen to impose such standards on recreational target shooting. See 24 V.S.A. § 4407(7).

In characterizing the shooting range as a "private accessory residential use," the trial court implicitly concluded that it fell outside of the zoning regulations. The court's use of the phrase "private accessory residential use" instead of the phrase "accessory use" found in the zoning regulations expressed the court's understanding of the principle that certain recreational activities, such as target shooting of the kind in question, are de minimis uses of private property which are neither regulated nor contemplated by the zoning regulations. See *Mazziotti v. Allstate Ins. Co.*, 695 A.2d 1010, 1014 (Conn. 1997) (judgments are construed in same manner as other written instruments and determinative factor is intention of trial court "as gathered from all parts of the judgment"). The court's conclusion was sound in law, and adequately supported by the record. Accordingly, its judgment must be upheld.

*Affirmed.*