STATE OF VERMONT

| SUPERIOR COURT | ENVIRONMENTAL DIVISION |
| Vermont Unit | Docket Nos. 144-10-13 Vtec |
| | 145-10-13 Vtec |

| Brady Sullivan SV, LLC NOV | **DECISION ON MOTION** |

Now pending before the Court are two related matters involving the occasional landing of a private helicopter at the Snow Vidda Condominium development ("Snow Vidda") in West Dover, Vermont. In the first matter, Brady Sullivan SV, LLC Notice of Violation, Docket No. 144-10-13 Vtec ("NOV appeal"), Brady Sullivan SV, LLC ("Brady Sullivan") appeals the September 30, 2013 decision by the Town of Dover Development Review Board ("DRB") that: (1) upheld the Notice of Violation issued to Brady Sullivan by the Town of Dover Zoning Administrator ("ZA") for using the Snow Vidda property for the landing and takeoff of a helicopter; and (2) concluded that a Planned Unit Development ("PUD") amendment would be required for landing a helicopter at Snow Vidda. In the second matter, Snow Vidda Condominium PUD Amendment, Docket No. 145-10-13 Vtec ("PUD amendment appeal"), Brady Sullivan appeals the DRB's September 30, 2013 decision denying Brady Sullivan's request for a PUD amendment to designate a portion of the Snow Vidda property as a helicopter landing area for a Rescue Facility and for personal use.

Brady Sullivan is represented in this proceeding by Robin Stern, Esq.; the Town of Dover ("Town") is represented by Joseph S. McLean, Esq. and David W. Rugh, Esq.

**Factual Background**

For the purpose of putting the pending motion into context, we recite the following facts, which we understand to be undisputed unless otherwise noted.

1. Brady Sullivan is the owner and occupier of a portion of the Snow Vidda development; the entire development consists of an approximately 14-acre parcel of land off of Snow Vidda Loop in the Resort Center Zoning District ("RST District") in Dover, Vermont.

1

2. A portion of Snow Vidda is currently developed with ten "townhouse" style condominium units, eight of which are owned by private individuals and two of which are owned by Brady Sullivan.

3. Development of the Snow Vida condominium complex was authorized in 2006 by a zoning permit issued by the ZA, which followed the DRB's approval of the PUD application. Neither the 2006 permit nor the underlying application contains a provision for the takeoff and landing of a helicopter on the project site.

4. In recent years, Brady Sullivan has occasionally used the Snow Vidda property for the landing and takeoff of a helicopter.[1]

5. On March 22, 2013, the ZA issued Brady Sullivan a written Notice of Violation ("NOV") for using the Snow Vidda property for the landing and takeoff of a helicopter.[2]

6. On April 5, 2013, Brady Sullivan appealed the NOV to the DRB.

7. On September 30, 2013, following a public hearing on August 8, 2013 that was continued to August 22, 2013, the DRB issued its written decision upholding the NOV.

8. On June 12, 2013, Brady Sullivan submitted an application for a zoning permit to amend the previously-approved Snow Vidda PUD for "Designation of 100' x 100' area for helicopter landing" pursuant to § 470 and § 490 of the Town of Dover Zoning Bylaw and for "Approval for occasional landing of emergency and private helicopters."

9. Brady Sullivan requested approval to amend the PUD to designate the land area for helicopters as a "Rescue Facility" use, an "Accessory Use," or a "Use Not Provided For" under the Zoning Bylaw.

10. Brady Sullivan did not propose any building of structures pursuant to the amendment.

11. The proposed 100' x 100' landing area is on condominium common land, easterly of the ten existing condominium units.

---

[1] Although Brady Sullivan disputes the legal issue of whether a zoning permit is required for such landing, it does not dispute that the occasional landings occurred. In fact, Brady Sullivan attached to its opposition the affidavit of Jared Kaufman which states, "I have both landed the helicopter at, and flown from, Snow Vidda for purposes of visiting the project." Kaufman Aff. at ¶ 13.

[2] Although Brady Sullivan disputes the legal basis for the NOV, it does not dispute that such NOV was issued and received by Brady Sullivan.

12. On September 30, 2013, following a public hearing on August 8, 2013 that was continued to August 22, 2013, the DRB issued its written decision denying Brady Sullivan's application to amend its PUD to designate a helicopter landing area.

### Motion for Summary Judgment

The Statement of Questions is the same in both appeals. It states:

1. Where appellant's occasional landing of its private helicopter on its premises, where no alterations to the property have been made or are contemplated, and such landing comply with all relevant aeronautic rules, constitute "land development" so as to require a zoning permit?

2. Where the helicopter is used by appellant as a personal vehicle such as a car or truck, to provide transportation to and from its projects and premises, is such use accessory to the existing PUD use?

3. Does appellant's proposal to designate a portion if [sic] its premises a "Rescue Facility" to allow for the landing of medical transport helicopters meet the requirements of the Dover Bylaw where such use is permitted in the district wherein appellant's premises lie.

(Statement of Questions at 1, filed Dec. 2, 2013).

The Town of Dover (the "Town") now moves for summary judgment in both the NOV appeal and the PUD amendment appeal. In its motion, the Town argues that there are no material facts in dispute and that the Town is entitled to summary judgment in the NOV appeal because Brady Sullivan's landing and take-off of a helicopter at Snow Vidda is "land development" pursuant to the Town of Dover, Vermont Zoning Bylaw ("Bylaw") that was undertaken without a permit. The Town also argues that it is entitled to summary judgment in the PUD amendment appeal because Brady Sullivan's application to amend the Snow Vidda Condominium PUD to designate a landing and take-off area for a helicopter cannot be approved as either an accessory use or as a "Rescue Facility" pursuant to the Town's Zoning Bylaw. Brady Sullivan opposes the motion.

## I.    Standard of Review

We will grant summary judgment to a moving party upon a showing that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a); V.R.E.C.P. 5(a)(2). We must "accept as true the [factual] allegations made in opposition to the motion for summary judgment" and give the non-moving party the benefit of all reasonable doubts and inferences. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176

Vt. 356 (internal citation omitted); see V.R.C.P. 56(c) (laying out summary judgment procedures). In considering a motion for summary judgment, we do not "make findings on disputed factual issues." Blake v. Nationwide Ins. Co., 2006 VT 48, ¶ 21, 180 Vt. 14; Gettis v. Green Mtn. Econ. Dev. Corp., 2005 VT 117, ¶ 19, 179 Vt. 117. The Court does not judge the credibility of the parties or their witnesses or the weight of the facts offered through the affidavits submitted on summary judgment. Provost v. Fletcher Allen Health Care, Inc., 2005 VT 115, ¶ 15, 179 Vt. 545 (stating that summary judgment is not warranted simply because a movant offers facts that appear more plausible than those tendered in opposition, or if one party appears unlikely to prevail at trial).

When considering the legal issues presented in these appeals, we interpret a zoning ordinance using the familiar rules of statutory construction. In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262. We will "construe words according to their plain and ordinary meaning, giving effect to the whole and every part of the ordinance." Id. Where the plain meaning of the ordinance is clear it must be enforced and no further interpretation is necessary. Vermont Alliance of Nonprofit Orgs. v. City of Burlington, 2004 VT 57, ¶ 6, 177 Vt. 47 (citing Hill v. Conway, 143 Vt. 91, 93 (1983)).

Each of the two pending appeals raise a basic legal issue. The PUD amendment appeal questions whether a permit is needed for Brady Sullivan's activities and, if so, whether such a permit should be granted in response to the pending application. The NOV appeal challenges the ZA's determination (which the DRB affirmed) that Brady Sullivan's use of its property for helicopter landings and take-offs without a permit was a violation of the Bylaw. Because the answer to the legal issues raised in the PUD amendment appeal impacts upon how we address the legal issue raised in the NOV appeal, we address the legal issues in that order.

## II.     Legal Issues raised in the PUD Amendment Appeal

Snow Vidda is located in the RST District, in which a planned unit development ("PUD") may be authorized as a conditional use. Bylaw § 470. A PUD is "[a]n area of land controlled by a landowner, to be developed as a single entity for a number of dwelling units and/or mixed commercial and industrial uses, if any . . . ." Id. A PUD may only consist "of uses, or [a] mix of uses, that are permitted or conditionally permitted in the underlying district in which the PUD will be located." Bylaw § 720(A). The Snow Vidda development received conditional use

4

approval as a PUD when it was first proposed and constructed. The record before us does not reveal that any mention of a helicopter being used at the development was made during the original permit application process.

### A.       Land Development

The Zoning Bylaw provides that "[n]o land development may commence, (except as provided in Sections 305, and 315) unless a Zoning Permit has been duly issued by the Zoning Administrator, as provided for in Section 4449 of the [Vermont Planning and Development] Act."[3] Bylaw § 300. The Bylaw defines "Land Development" as:

> The division of a parcel into two (2) or more parcels; the construction, reconstruction, conversion, structural alteration, relocation or enlargement of any building or other structure; or of any mining, excavation or landfill, or any change in the use of any building or other structure, or land, or extension of use of land.

Bylaw, Article 2.[4] In relation to the two pending appeals, the most applicable portion of this definition is the last phrase, where a "change" or "extension" of the use of land is included in the definition of land development. Id.

A "use" is defined as "[t]he purpose for which a building, structure or parcel of land is designed, intended, occupied or used." Id. "Change of use" includes "[a]ny change of use from one category to another (i.e. residential to commercial) or within a category of use (i.e. one conditional use to another) . . . ." Id. Currently, the property is in a PUD use, consisting of residential dwellings used as second homes near a resort development.

The Town argues that Brady Sullivan's helicopter landing and take-off at Snow Vidda is a "change in the use of . . . land" from the previously-approved PUD, relying on the Bylaw definitions, cited above. The Town also argues that the landing and take-off of a helicopter

---

[3]  Brady Sullivan does not argue that any exception under § 305 or § 315 applies here. Under the plain meaning of these exceptions, we conclude that no exception applies.

[4]  The Bylaw's "land development" definition differs from the statutory definition in two ways. First, the statutory definition begins, "'Land development' means . . . .'" Second, the statutory definition separates the final clause with "and": "and any change in the use of any building or other structure, or land, or extension of use of land." We disagree with Brady Sullivan that the Town's replacement of the "and" with "or" in that final clause somehow exceeds the authority of the enabling legislation. Rather, we conclude that any one of the items listed in the statutory definition, just like any one of the items listed in the Bylaw definition, qualifies as land development.

constitutes an "Airport" use under its Bylaw,[5] which the Town asserts is neither permitted as of right nor conditionally permitted in the RST District. Bylaw § 470. The Town further asserts that the change from a residential PUD to an airport use is a change of use constituting land development that requires further permit approval.

Brady Sullivan argues that the "occasional landing of the helicopter" does not rise to "land development" as intended by the drafters of the ordinance, and that concluding to the contrary would lead to "an irrational and unworkable result, contrary to common sense." (Brady Sullivan SV, LLC Memorandum of Law in Opposition to Motion for Summary Judgment at 9, filed May 19, 2014). Brady Sullivan also argues that the infrequent landing of a private helicopter on private property does not constitute an airport use, because "[a]n airport contemplates a more intensive and dedicated use of the property for aircraft and passenger transportation that the unimproved open area occasionally used on Brady Sullivan's property." Id. at 10. Rather, Brady Sullivan argues, we should treat the landing and takeoff as a means of transportation, with a "de minimis impact," that the Bylaw does not prohibit. For the reasons detailed below and based upon facts that the parties agree are undisputed, we reach a different legal conclusion,.[6]

The Town Bylaw defines an "airport" use as "any area of land designed and set aside for the landing and take-off of aircraft, including all necessary facilities for the housing and maintenance of aircraft, as well as control towers and facilities for passengers." Bylaw, Article 2. Brady Sullivan has previously used an undefined portion of open space at Snow Vidda for the landing and takeoff of its helicopter, and it proposes to use a designated 100-foot-by-100-foot area at Snow Vidda for this purpose in the future. Thus, Brady Sullivan has designed and set aside this area of land for the landing and take-off of aircraft. While any "facilities for the

---

[5] An "Airport" is "[a]ny area of land designed and set aside for the landing and take-off of aircraft, including all necessary facilities for the housing and maintenance of aircraft, as well as control towers and facilities for passengers." DZB, Article 2.

[6] Appellant takes issue with many of the assertions made by the Town and in affidavits submitted on behalf of the Town. To the extent that Appellant's concerns reference disputed facts, we do not rely upon the Town's representations when considering the pending summary judgment motion. However, to the extent that Appellant takes issue with Town assertions that are actually legal conclusions, we seek to resolve those legal conflicts in this Decision. For example, the parties appear to agree that Appellant has operated its helicopter on the Snow Vidda development on an occasional basis. That is a factual representation and we understand it to be undisputed. The parties strongly disagree, however, on whether Applicant's helicopter activities constitute "land development." That is a legal conclusion that we attempt to resolve in this Decision.

6

housing and maintenance of aircraft, [and] control towers and facilities for passengers" also fall under the "airport use" in the Bylaw, we conclude that an area designed and set aside for the landing and take-off of aircraft fits the Bylaw definition for an airport, whether or not it happens to have such facilities and control towers.  Therefore, we conclude that Brady Sullivan's proposal fits the plain meaning of an "airport" as defined in the Bylaw.[7]  Moreover, the change in the use of a portion of the property (i.e.: from residential to airport) constitutes land development under the Bylaw, per Bylaw, Article 2.

We also conclude that the proposed use here is distinguishable from the activities at issue in In re Laberge Moto-Cross Track, 2011 VT 1, 189 Vt. 578 and In re Scheiber, 168 Vt. 534 (1998).  In Laberge, the Vermont Supreme Court held that a family's private moto-cross track located on property within the town's rural-residential district and improved with a dwelling was a "de minimis incidental use of property."  Laberge Moto-Cross Track, 2011 VT 1, ¶ 7. Regarding any suggested change in the use of land, the Supreme Court reasoned that because the riding of motor bikes on private property did not require a permit, the aggregation of dirt and tire-wear did not constitute a substantial change (i.e. land development) requiring a permit.  Id. at ¶ 13.  In Scheiber, the Supreme Court held that "[c]ertain recreational uses of private property plainly fall outside the rudiments of zoning."  Scheiber, 168 Vt. at 538.  Thus, because the applicable zoning ordinance did not address the target shooting at issue, the Court upheld the trial court's conclusion that the target shooting was a "de minimis [use] of private property which [was] neither regulated nor contemplated by the zoning regulations."  Id. at 539.

Brady Sullivan argues that these two Supreme Court precedents entitle them to judgment as a matter of law.  We disagree.  First, these cases dealt with de minimis recreational uses of a residential property by the residents.  Brady Sullivan seeks to extend these cases to the occasional landing and take-off of a helicopter in a residential development.  Brady Sullivan appears to assert that the use of a helicopter to access its property is little different than using a car or truck to access the property and is therefore not a substantial change requiring a permit.  But the residential dwellings were permitted and constructed to be accessed by cars or

---

[7]  Because an emergency or rescue aircraft landing does not depend on an area "designed and set aside for the land and take-off of aircraft," we do not agree with Brady Sullivan that any rescue landings would render an area of land an "airport."

trucks: they have parking areas for cars or trucks and are adjacent to roadways for vehicular use. The record before us reveals no anticipation of helicopter use at this residential development.

We conclude that use of a portion of this property for the takeoff and landing of a helicopter is well beyond the scope of the planned or permitted PUD use. Furthermore, as noted above, the Bylaw defines a use category—"airport"—which Brady Sullivan's use falls squarely within. For these reasons, we conclude that Brady Sullivan's proposal constitutes "land development" under the Bylaw, thereby triggering the need to obtain a permit or permit amendment before this use may be lawful.

**B.        Accessory to PUD**

While we agree with the Town that Brady Sullivan's use of the property as a landing pad for the occasional landing and takeoff of its helicopter constitutes land development, this legal conclusion does not resolve the present PUD amendment appeal. Brady Sullivan argues that the use could be approved as an accessory use to its PUD and that material facts are in dispute regarding whether the use of the property is an accessory use. While we agree that Appellant's described use could possibly be regarded as an accessory use, we conclude that the facts as presented are both lacking and disputed in such a way as to prohibit rendering a legal conclusion at this time.

An accessory use is defined as "[a] use subordinate to and incident to the principal use of land or building." Bylaw, Article 2. We do not have sufficient undisputed facts before the Court to conclude as a matter of law that Brady Sullivan's proposed use is subordinate and incidental to its multi-family residential PUD. While the Town argues that a helicopter landing area could not possibly be a subordinate or incidental use, there is nothing in the Bylaw that prohibits a use such as that proposed here to be accessory to the presently permitted use. The fact that a use, on its own, may be permitted does not mean that the use could not also be an accessory use. The Bylaw defines as a separate use category "accessory uses" and regulates those uses independently. Nothing in the definition of accessory use limits those uses based on the Bylaw table of permitted or conditional uses. Bylaw, Article 2, § 470. In fact, many uses operated as accessory uses may also be defined as primary uses under the Bylaw, when operated independently. See Scheiber, 168 Vt. at 537 (noting that "accessory uses have traditionally involved such various activities as home occupations, tennis courts, and airplane

8

hangers"); 1 P. Salkin, <u>American Law of Zoning</u> § 9:45 (5th ed. 2014) ("Whether a use is an appropriate accessory to a permitted use is decided on a case-by-case basis, absent specific language in the ordinance."). By way of example, the Bylaw defines "recreation, outdoor" use as including "a trap, skeet and/or archery range, swimming pool, amusement park, outdoor concert area, <u>tennis court</u>, recreational trial or similar place for outdoor recreation." Bylaw, Article 2 (emphasis added). This does not mean, however, that a private outdoor recreation use could not be established as an accessory use to a PUD, provided it met the definition of accessory use and obtained the required permit. To hold otherwise would contradict the plain language definition of "accessory use" and the regulations that state that accessory uses to permitted uses are permitted uses, and that accessory uses to conditional uses are conditional uses. Because of this, and the dispute of material facts presented by the parties, we cannot say as a matter of law based on the facts before us that the use proposed could not be an accessory use.

A PUD is a conditional use in the RST District. Bylaw § 470. Accessory uses to conditional uses are also conditional uses in the RST District. <u>Id</u>. Thus, even if the description of the proposed helicopter landing/take-off area presented at trial support its classification as an accessory use, we conclude that the Bylaw requires conditional use approval before Brady Sullivan can lawfully put their property to this new use.[8]

### C. Rescue Facility

Brady Sullivan also seeks a summary determination that approves its PUD amendment application, arguing that the landing and takeoff demarcation on its land should be regarded as a "rescue facility," which is a permitted use within the RST District. For the reasons summarized below, we cannot conclude that the facts currently presented support this argument.

The Bylaw defines "Rescue Facility" as a "[s]tructure used to store rescue equipment. Also used to dispatch personnel providing emergency services, usually associated with recreational activity." Bylaw Article 2. Based on the undisputed facts before us, Brady Sullivan proposes that its helicopter landing pad could be used for rescue helicopters to land in an

---

[8] A permit for the proposed helicopter operation would require both conditional use approval and an amendment to the already-existing PUD approval. The Bylaw appears to allow for a single application for both of these approvals for a single change of use.

emergency. However, this proposed use falls squarely outside the definition of rescue facility. If, at trial, Brady Sullivan comes forward with facts establishing that the primary purpose of the landing area is to store rescue equipment or dispatch personnel providing emergency services, it may be entitled to a permit for a rescue facility. The project as presently described, however, does not fit within the Bylaw definition for a rescue facility.

### III. Legal Issues raised in the NOV Appeal

We now turn to the legal issues raised in the NOV appeal, although our analysis is made brief by our discussion above. Appellant concedes that it used the Snow Vidda property to land and launch its helicopter. It also concedes that the prior PUD approval does not specifically authorize these helicopter operations. Presumably, its PUD approval makes no mention of helicopters because the underlying application sought no such approval. For the reasons stated above and below, we conclude that Appellant's past helicopter activities at Snow Vidda constitute more than a de minimis use of the land. Thus, we conclude that this use constitutes land development that requires a permit or permit amendment to lawfully occur. See Bylaw § 300 ("[n]o land development may commence, (except as provided in Sections 305, and 315) unless a Zoning Permit has been duly issued by the Zoning Administrator, as provided for in Section 4449 of the [Vermont Planning and Development] Act." Since Brady Sullivan concedes that it does not have a permit that authorizes helicopter landings and takeoffs, it has committed the zoning violation noticed by the ZA in the NOV. For these reasons, its challenge to the appealed NOV must fail as a matter of law.

Secondly, the facts presently before us do not support a final determination of whether Brady Sullivan's application for an amendment to its PUD approval may be granted; that determination must await a trial.

But, given our determinations here, we conclude that Brady Sullivan's use of its land required a permit that it did not have. Those activities support our conclusion that the issued NOV must stand. For this reason, we **GRANT** the Town summary judgment and affirm the NOV.

### Conclusion

Brady Sullivan's proposed use of an area of land for the landing and takeoff of its helicopter falls within the Town of Dover, Vermont Zoning Bylaw definition of land development. We therefore conclude that a permit is required for such use and do hereby

**GRANT** summary judgment for the Town on this legal issue. Because we have rendered this legal determination, we also conclude that Brady Sullivan's past use of its property for helicopter landings without first receiving permit authority constituted a violation of Bylaw§ 300. However, we reserve rendering a final judgment in the NOV appeal because the record before us lacks sufficient facts for the Court to determine how frequently Brady Sullivan used the Snow Vidda property for helicopter landings and takeoffs during the NOV noticed period. Since the Town has not yet chosen to file an enforcement action based upon the NOV at issue, we are not yet charged with determining the relief to which the Town may (or may not) be entitled. With our goal of assuring a "summary and expedited proceeding[,] consistent with a full and fair determination"[9] we envision coordinating the issuance of a final judgment order in both the NOV and PUD amendment appeals, once a final determination of the later appeal has been made after trial.

We further conclude that the landing and takeoff of a helicopter is not a de minimis use incidental to a residential PUD such that it does not require a permit separate from the original 2006 PUD approval. However, the fact that the proposed use fits within the definition of an "airport" use does not foreclose an application for it to be authorized as an accessory use, provided it meets all applicable Bylaw requirements. There are not sufficient undisputed facts before the Court to determine whether the proposed use meets the definition of an accessory use. For all these reasons, as detailed above, the Town of Dover's Motion for Summary Judgment is **DENIED as to the PUD amendment appeal**.

Although Brady Sullivan argued that its proposal could be approved as an accessory use, it is not clear that the application before the Court is for conditional use approval, which we have concluded is required for an accessory use to an already-existing PUD in the RST District.[10] This Court does not have the power to convert an application for a permitted use into one for a conditional use because doing so would not provide the required public notice of the conditional use application. In re Torres, 154 Vt. 233, 236 (1990); see 24 V.S.A. § 4464 (requiring a warned public hearing for conditional use review). It is unclear based on the record before the Court what notice was provided for Brady Sullivan's PUD amendment application

---

[9] V.R.E.C.P. 1.

[10] The Town makes reference to Applicant's request for conditional use approval, be we have not received evidence of that in either Appellant's application or the notices that preceded the DRB hearings.

11

and therefore whether the de novo appeal may continue on that application. We direct that the parties prepare to address this and other outstanding legal issues as they prepare for trial.

Electronically signed on September 26, 2014 at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

_____

Thomas S. Durkin, Judge
Environmental Division