NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2025 VT 4

No. 24-AP-022

| | |
|---|---|
| In re Brewster River Mountain Bike Club, Inc. Conditional Use Application (David Demarest & Jeff Moulton, Appellants) | Supreme Court <br><br> On Appeal from Superior Court, Environmental Division <br><br> September Term, 2024 |

Thomas S. Durkin, J.

Jeremy S. Grant, Burlington, for Appellants.

Nicholas A. E. Low of Tarrant, Gillies & Shems, Montpelier, for Appellee.

PRESENT: Reiber, C.J., Eaton, Cohen and Waples, JJ., and Johnson, J. (Ret.), Specially Assigned

¶ 1.    **COHEN, J.**  This case involves a foot bridge on the property of landowners, Nicole Ritchie and Elisabeth McIntee, in the Town of Underhill.  Neighbors David Demarest and Jeff Moulton appeal an Environmental Division order holding that improvements to the bridge amounted to a de minimis use of private property for recreational purposes and, therefore, were not subject to the Town's zoning regulations.  We agree that landowners' improvements to the bridge are not subject to zoning regulation and affirm.

¶ 2.    The record provides the following background facts, which are not disputed.  In May of 2021, landowners worked with a local mountain biking nonprofit, Brewster River Mountain Bike Club, to replace the foot bridge at issue in this case to make a more secure crossing over Settlement Brook for access to the Club's recreational trail network.  The old bridge was two

feet wide and eight feet long and rested on the bed of the brook. The new bridge measured four feet wide and sixteen feet long and spanned the brook at the top of the banks. A new ramp was also put in place to connect the existing bike trail to the new bridge, and the old bridge was repurposed as a boardwalk a few feet away. Uncontested trail camera footage recorded forty people crossing the bridge over the course of one month. The new bridge was connected to a trail network managed by the Club across various parcels of private property, subject to verbal agreements with each property owner including landowners.

¶ 3. In August of 2021, the Town of Underhill Developmental Review Board granted the Club a retroactive conditional-use permit and variance for the bridge and ramp. Neighbors appealed that decision to the Environmental Division, arguing that the Club lacked standing to seek a permit and that the bridge contravened the Town regulations. After a site visit and one-day merits hearing, the Environmental Division made the following findings regarding the improvements on landowners' property. Installation of the new bridge created little to no land disturbance to either the brook or surrounding area. Since its installation, the bridge had been used by landowners, their neighbors, and some other members of the public for recreational purposes such as walking, hiking, and mountain biking. The bridge was open to the public but information about the bridge and other trails used by the Club was not readily available and there was no map of the trail network. There were no fees to use the trail system. The Environmental Division rendered the underlying permit void, holding that the bridge was a de minimis recreational use of private property and, therefore, not subject to zoning regulations. The Environmental Division made no findings concerning whether the bridge was permissible if the Underhill zoning regulations applied.

¶ 4. On appeal, neighbors argue that the new bridge is not a de minimis recreational use and that the Town's zoning regulations apply to the improvements made to the bridge and ramp. They contend that the Town's zoning regulations preclude this improvement and that the Club lacked standing to seek a permit in the first place. We disagree. An appropriate reading of the

zoning ordinance's intended scope indicates that the small bridge—which was created with little to no land disturbance, has a small footprint, was built with wood and hand tools, poses minimal health and safety risks, was used recreationally, and is aligned with zoning ordinance goals to encourage recreation—is a de minimis recreational use of private property outside the scope of the zoning ordinance. Consequently, we do not reach neighbors' other argument that the underlying permit was given in error and that the Club lacked standing.

¶ 5. "We review the [Environmental Division's] factual findings for clear error and its findings of law de novo." In re Korrow Real Est., LLC Act 250 Permit Amend. Application, 2018 VT 39, ¶ 17, 207 Vt. 274, 187 A.3d 1125. "We approach the interpretation of [zoning] ordinances and permits as a legal question that we resolve without deference to the trial court." In re Confluence Behav. Health, LLC, 2017 VT 112, ¶ 17, 206 Vt. 302, 180 A.3d 867.[1] Furthermore, "because zoning ordinances are in derogation of private property rights, they must be construed narrowly in favor of the property owner." In re Application of Lathrop Ltd. P'ship I, 2015 VT 49, ¶ 29, 199 Vt. 19, 121 A.3d 630 (quotation omitted). Therefore, we review the Environmental Division's legal conclusion that the bridge is a de minimis recreational use and not subject to zoning regulations without deference to the Environmental Division.

¶ 6. We have addressed de minimis recreational uses in two prior cases: In re Scheiber, 168 Vt. at 539, 724 A.2d at 478, and In re Laberge Moto-Cross Track, 2011 VT 1, ¶ 7. In Scheiber, the landowners created a shooting range by "removing approximately ten trees, moving topsoil to fashion an earthen backstop or berm, and erecting a small platform." 168 Vt. at 535, 724 A.2d at 476. The Court did not specify what sort of materials the landowners used to create the platform

---

[1] In 2017, this Court overruled cases affording deference to the Environmental Division's interpretation of permit conditions or zoning ordinances and clarified that "we review zoning ordinances and municipal permit conditions according to the principles of statutory construction." Confluence Behav. Health, LLC, 2017 VT 112, ¶¶ 12, 17 (overruling prior deferential standard). Both cases central to our opinion, In re Scheiber and In re Laberge Moto-Cross Track, employed the now-overruled deferential standard of review, but that does not impact our analysis in this case. In re Scheiber, 168 Vt. 534, 535, 724 A.2d 475, 476 (1998); In re Laberge Moto-Cross Track, 2011 VT 1, ¶ 7, 189 Vt. 578, 15 A.3d 590 (mem.).

3

or whether the materials were brought in from offsite. Id. The shooting range was thirty feet wide and 300 feet long. Id. The landowners used the range for target shooting with family, friends, and members of a local club. Id. This Court determined that the shooting range was not a "structure," "accessory use," or "private club," nor constituted "private outdoor recreation" as defined by the applicable zoning ordinance and that the ordinance did not explicitly address target shooting. Id. at 536-38, 724 A.2d at 476-77. The analysis focused on several different factors that distinguished the shooting range from the type of "land development" given as examples in the ordinance that would require a permit. Id. at 536, 724 A.2d at 477. The Court pointed out the minimal land disturbance and alteration, small size of the platform, and low volume of public use as differentiating features. Id. We concluded that the shooting range fell into the category of "certain recreational activities . . . [that] are de minimis uses of private property which are neither regulated nor contemplated by the zoning regulations." Id. at 539, 724 A.2d at 478.

¶ 7.     In Laberge, the landowners created a moto-cross track on their private property by "fashioning a series of earthen jumps and berms using a small lawn-tractor to shift on-site excavation materials left over from the earlier construction of their house and driveway." 2011 VT 1, ¶ 2. The track was approximately three feet wide, one-half mile long, and snaked over about one acre of land. Id. The landowners used their track for moto-cross races with their family, friends, and guests. Id. ¶ 3. This Court held that the track was not a "structure" or a "substantial change in use" as defined by the zoning ordinance. Id. ¶ 13. Once again, we distinguished between the minimal changes needed to make the track and the significantly more disruptive examples given in the zoning ordinance. Id. ¶ 11. We specifically pointed to the lack of impact to the land including minimal construction and no excavation, the small area of land affected, the lack of external material used, the lack of change to the character of the property, private use, and lack of health and safety risks. Id. We concluded that there was "no reason to believe [the track] was contemplated for exclusion by the zoning regulations." Id. ¶ 15.

4

¶ 8. From these prior cases, several considerations emerge as relevant to determining whether a land improvement is a de minimis recreational use of property and, therefore, not subject to local zoning. These include: (1) the extent to which the use is explicitly addressed in the zoning ordinance, (2) the land disturbance created by the use, (3) the size of the use's footprint relative to the overall lot size, (4) the type of materials used, (5) the use's potential impact on health and safety, (6) whether the use is recreational, and finally, (7) whether the outcome aligns with the goals of zoning.

¶ 9. We first look to the extent to which the bridge is explicitly addressed in the Town's zoning ordinance. We use familiar rules of statutory and ordinance construction. "Words in statutes and ordinances should be given their plain meaning." In re Gregoire, 170 Vt. 556, 559, 742 A.2d 1232, 1235 (1999) (mem.). "We adopt a construction that implements the ordinance's legislative purpose, and, in any event, will apply common sense." In re Lashins, 174 Vt. 467, 469, 807 A.2d 420, 423 (2002) (mem.) (quotation and citation omitted). Furthermore, it is a well-established rule in this state that in construing land use regulations "any uncertainty must be resolved in favor of the property owner." In re Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 22, 195 Vt. 586, 93 A.3d 82.

¶ 10. Based on several provisions of the Town's regulations, neighbors argue that the bridge is subject to Underhill's zoning ordinance as "land development." The regulations require that "[n]o land subdivision or development shall commence in the Town of Underhill except in conformance with these regulations" and specify that "[l]and subdivision or development not specifically authorized under these regulations . . . is prohibited." Town of Underhill Unified Land Use & Development Regulations § 1.3 (with amends. through March 3, 2020) [hereinafter ULUDR], https://www.underhillvt.gov/media/7131 [https://perma.cc/8243-X9FL]. The zoning ordinance goes on to define land development as "[t]he construction, reconstruction, conversion, structural alteration, relocation or enlargement of any building or other structure." Id. § 11.2. The term "structure" is defined as an "assembly of materials on the land for occupancy or use, including

5

a building, mobile home or trailer, sign, wall or fence." Id. § 11.2. The regulations also list a number of uses and structures that are exempt from permitting requirements because the Town considers them to "impose no impact or a de minimus [sic] impact on the surrounding area and the overall pattern of land development in the town." Id. § 10.2. Among other things, the exempted list includes "[r]ecreational trails or paths located outside of required stream and wetland buffer areas" but the list is silent concerning both recreational trails withing buffer areas and structures within buffer areas. Id. § 10.2(A)(6). Further, the zoning ordinance references Settlement Brook as a waterway that requires a setback and lists permit requirements for stream crossings, paths intended for recreation and public access to surface waters, and "[r]oadways or access drives for purposes of crossing a stream." Id. § 3.19(D), (E)(2)(d). Neighbors assert that when these provisions are taken together it is evident that the bridge is a structure within the meaning of the Town's regulations: it is an assembly of materials, the materials are used for a stream crossing, and it is within a buffer area.

¶ 11.     This is a closer case than the uses we analyzed in Scheiber and Laberge because it is uncontested that the bridge crosses a stream and is within the setback and because the zoning ordinance here is more precise about structures within waterway setbacks and stream crossings. Id. § 3.19; cf. Scheiber, 168 Vt. at 539, 724 A.2d at 478 ("Cabot is empowered to regulate recreational shooting activities through its zoning authority, and indeed has chosen to regulate trap and skeet shooting and archery ranges, while remaining silent about target shooting of the kind at issue here."); Laberge, 2011 VT 1, ¶ 12 (describing that "it is evident that the town did not intend to require a permit for a lightly modified motorcycle track essentially created by riding the bikes, which is only used privately and rests exclusively on landowners' property"). However, the applicable zoning ordinance here retains some ambiguity because it does not explicitly address recreational trails crossing streams. For example, the ordinance references "[r]oadways and access drives for purposes of crossing a stream" which implies motor vehicle use rather than the footbridge at issue here. ULUDR § 3.19(E)(2)(d). It also references "[p]aved or unpaved public

6

paths, intended for public access and recreation" but not private recreational paths. Id. § 3.19(E)(2)(b). Finally, it references requirements for an "[e]xpansion of an [e]xisting structure" that is nonconforming, but this implies that the use is a "structure," which is contested in this case. Id. § 3.19(G). Therefore, while somewhat ambiguous, this zoning ordinance contemplates the use at issue—the bridge—more explicitly than the ordinances analyzed in Scheiber and Laberge.

¶ 12. However, in Scheiber and Laberge, we cautioned against using an expansively broad interpretation of zoning ordinances divorced from the goals of zoning and common sense. See Scheiber, 168 Vt. at 538, 724 A.2d at 478 (explaining that even if ordinance could be expansively interpreted to apply "it could not be seriously contended that it is a violation of the zoning ordinance for one to erect a shuffle-board or a badminton court in his own yard for the use and enjoyment of himself, his family and friends" (quoting City of New Orleans v. Estrade, 8 So. 2d 536, 537 (La. 1942))); Laberge, 2011 VT 1, ¶ 12 ("To accept [a broad] definition of structure would subject to zoning review a multitude of de minimis residential activities never intended to be covered by zoning regulations."). The same concern applies here. An accessory dwelling within a riparian border that contributes to soil erosion and stream instability is not the same as a picnic bench beside a stream that allows the landowners and their guests to sit and watch the water. Despite a clear difference, if we read the applicable zoning ordinance expansively, both would be regulated.

¶ 13. The second factor is the degree of land and water disturbance. In Laberge, in order to determine whether the track was a "structure" we specifically relied on a comparison between the track and the more significant land disruption that would be incurred during construction of the items explicitly listed in that town's zoning ordinance. 2011 VT 1, ¶ 11 (analyzing "differences between landowners' recreational track," which was created "through the incidental erosive impact of the motorbikes' tires and the subsequent movement of dirt already located on the property," and the types of structures requiring a permit specifically enumerated in the zoning regulations which would require more disruption). Similarly, here the Environmental Division found that the Club

7

and landowners created the new bridge with little to no land disturbance. The Environmental Division's finding of little to no land disturbance is supported by the record which indicates the stream banks "are vegetated and show no signs of erosion," the bridge was "built in a manner that prevents erosion and river/stream instability," and the bridge was above the stream's high-water mark which resulted in it "protect[ing] and maintain[ing] water quality." The lack of disturbance incurred by constructing the bridge can be contrasted with the likely impact of the structures contemplated by the zoning ordinance's definition. The "structures" contained on the list—which include buildings, trailers, tennis courts, in-ground swimming pools, telecommunications facilities, and gas station canopies—require substantial land disturbance to construct. ULUDR § 11.2. This contrast indicates that the town's zoning ordinance was not intended to cover structures like the new bridge.

¶ 14.    Next, we turn to the bridge's footprint. In Laberge, we compared the size of the track with the size requirements listed in the zoning ordinance which specified that buildings and pools must be "in excess of 100 square feet" to require a permit. 2011 VT 1, ¶¶ 10-11. The fact that the track was greater than 100 square feet was a "factor[] to be considered" but ultimately did not overwhelm other considerations. Id. ¶ 11. In this case, the new bridge is four feet wide and sixteen feet long and, when combined with the ramp and re-purposed old bridge, adds a total of only 120 square feet. While the ordinance's definition of structure does not include any specific size requirements, many of the examples listed in the ordinance would all likely have a far greater footprint than the bridge. See ULUDR § 11.2 (including buildings, trailers, tennis courts, in-ground swimming pools, telecommunications facilities, and gas station canopies as "structures.") In addition, the footprint of the bridge is significantly smaller than the over-7000-square-foot footprint of the changes made by the landowners in Scheiber and Laberge. Scheiber, 168 Vt. at 535, 714 A.2d at 476 (describing the shooting range as thirty feet wide and one hundred yards long); Laberge, 2011 VT 1, ¶ 2 (describing the track as three to four feet wide and one-half mile long).

8

¶ 15. The type of material used for the improvements can also influence whether a use is de minimis. In this case, landowners and the Club concede that they brought in wood to construct the bridge. Neighbors argue that whether or not a landowner brings in any material from elsewhere is crucial to our analysis of whether a use is de minimis. We find this argument unpersuasive. It is true that, in Laberge, the Court highlighted that the landowners "brought in no materials from elsewhere." 2011 VT 1, ¶ 2. However, a broader reading of Laberge indicates the Court did not intend for that fact to be dispositive. Instead, the Court used the fact in combination with others to demonstrate a smaller impact to the land than the shooting range in Scheiber (which, notably, was also a de minimis use despite involving constructing a shooting platform). See Laberge, 2011 VT 1, ¶ 15 (citing Scheiber, 168 Vt. at 535, 724 A.2d at 476) (listing multiple characteristics of moto-cross track to demonstrate "smaller impact" on land compared to shooting range in Scheiber). Thus, the extent to which materials are brought to the property is relevant but not dispositive to whether a use is de minimis. In this case, the relatively small volume of wood used to construct the replacement bridge does not preclude it's use in this context from being a de minimis recreational use.

¶ 16. Next, we turn to the bridge's potential impact on health and safety. In Laberge, the Court specifically differentiated the de minimis recreational moto-cross track from other examples of land development that "pose independent health and safety risks . . . or create the potential for increased vehicular traffic to and from the property." 2011 VT 1, ¶ 11. In this case, the definitions of "land development" and "structure" in the zoning ordinance give similar examples of structures that pose health and safety risks, including mining operations, excavation, landfill, additions to buildings, tennis courts, in-ground swimming pools, telecommunications facilities, gas station canopies, and tanks for outdoor storage of gas or oil. See ULUDR § 11.2 (defining "land development" and "structure"). Here, as in Laberge, "there has been no suggestion that landowners' recreational [use of the bridge] threatens the health or safety of surrounding neighbors, nor does its private residential use threaten to increase vehicular traffic to and from the

9

property." Laberge, 2011 VT 1, ¶ 11.  Furthermore, walking, hiking, and mountain biking over this bridge pose less health and safety risk than the shooting range in Scheiber.  See Scheiber, 168 Vt. at 535, 724 A.2d at 476 (describing Scheiber's concern "was based primarily on the fact that the weapons were fired in the general direction of his house.")

¶ 17.  Next, we turn to whether the bridge is recreational.  Landowners and their guests use the bridge for non-motorized pursuits such as walking, hiking, and mountain biking: all recreational activities.  See, e.g., 24 V.S.A. § 4302(c)(8)(B) (listing hiking as part of outdoor recreational activities).  The bridge is also not for commercial use because landowners do not charge a fee to use their bridge and trails.  Furthermore, information about the bridge and trails is not advertised or readily available to the public.  Therefore, the bridge is for recreational use.

¶ 18.  Neighbors argue that the bridge is not for recreational use because members of the public use the bridge and trails more than the landowners do.  However, allowing members of the public to access one's property does not preclude an activity from being recreational.  For example, this Court classified the shooting range in Scheiber as recreational even when a local chapter of the American Pistol and Rifle Association used it on multiple occasions.  Scheiber, 168 Vt. at 535, 724 A.2d at 476 (describing three occasions where landowners "used the range in connection with a rifle safety course for the benefit of the local chapter of the American Pistol and Rifle Association," which had also "held four annual picnics at the range").  In addition, Vermont law explicitly encourages landowners to make their land available to members of the public for recreational use.  See 12 V.S.A. § 5791 ("The purpose of this chapter is to encourage owners to make their land and water available to the public for no consideration for recreational uses.").  Aligned with furthering this goal, we decline to directly tie recreation to whether landowners use their land more than members of the public.  The bridge in this case is for recreational use because it is used by landowners for walking, hiking, and mountain biking and open for those uses by the public noncommercially.

10

¶ 19. Finally, we turn to ensuring that the outcome aligns with the purpose of zoning. The general purpose and goal of zoning is "to encourage the appropriate development of all lands in this State" and to manage organized municipal and regional growth and development. 24 V.S.A. § 4302(a). Incorporated within that broad goal, the Legislature has articulated more specific goals, including "promot[ing] the public health, safety against fire, floods, explosions, and other dangers" and "maintain[ing] and enhanc[ing] recreational opportunities." Id. § 4302(a), (c)(8). The Legislature has also specified that "[p]ublic access to noncommerical outdoor recreational opportunities . . . should be identified, provided, and protected wherever appropriate." Id. § 4302(c)(8)(B). Accordingly, in interpreting zoning ordinances, this Court has held that "[t]he primary purpose of zoning is to manage municipal and regional growth and development in an organized fashion, not to regulate the incidental recreational activities of private property owners." Scheiber, 168 Vt. at 538, 724 A.2d at 478.

¶ 20. The Town's regulations reflect these broad zoning purposes. The Town articulates that the purposes of its regulations include "[f]urther[ing] state planning goals and purposes established under the Act (§ 4302)," "[p]romot[ing] and protect[ing] public health, safety, and welfare," and "[p]rotect[ing] the individual property rights of landowners to the extent consistent with the other purposes of these regulations." ULUDR § 1.2. An analysis of these goals indicates an appropriate tension between ensuring appropriate development and minimizing intrusion into landowners' private recreational use of their land.

¶ 21. We note that our fact-specific analysis—that highlights whether a use creates land disturbance, has a large footprint, brings in materials, and affects health and safety—aligns with the goals of zoning. See, e.g., 24 V.S.A. § 4302(5) (stating goal of protecting natural features including water resources); id. § 4302(c)(8) (listing "maintain[ing] and enhanc[ing] recreational opportunities" as a goal of zoning). Our approach allows landowners to use their land for private recreational activities without being subject to a permitting process, but only so long as the recreational use of their property does not overly disturb or disrupt the land or waterway or create

11

health and safety risks. Applying these goals to the new bridge: the bridge's minimal impact to the land, small footprint, lack of health and safety issues, and recreational use convince us that holding that the bridge is a de minimis recreational use is not counter to the goals of zoning.

¶ 22. Considering all these factors together, we conclude that the new bridge constructed by landowners and the Club is a de minimis recreational use of landowners' property and therefore not subject to the Town's zoning regulations. Accordingly, we need not reach neighbors' other arguments concerning the appropriate application of the Underhill zoning regulations and whether the Club had standing to pursue a zoning application.

Affirmed.

FOR THE COURT:

_____

Associate Justice


¶ 23. **EATON, J., dissenting.** The Legislature has given municipalities broad power to regulate land development within their borders for multiple purposes, including managing municipal and regional growth, ensuring public safety, and protecting the natural environment. 24 V.S.A. §§ 4411, 4302. Respecting this broad authority, our precedents recognize a narrow exception for uses of land that are de minimis and outside of the scope of zoning regulations. We have found uses to be de minimis only twice, and in both instances the first step in our analysis was to determine whether the use was regulated by the applicable zoning regulations. The Environmental Division skipped this step, concluding that the landowners' bridge was a de minimis use without examining the language of the regulations. The majority agrees that an analysis of the zoning regulations must be conducted but, instead of reversing and remanding, concludes that the regulations are ambiguous and not directly applicable here. The majority's conclusion that the relevant zoning regulations are ambiguous is not supported by the plain language, which clearly indicates that construction of a new bridge, ramp, and boardwalk across

Settlement Brook, as occurred here, is a regulated use. I would therefore reverse and remand for the Environmental Division to consider whether a permit for this project is appropriate under Underhill's zoning regulations.

¶ 24. It is uncontested that landowners and the Club replaced an existing, smaller bridge that rested on the bed of Settlement Brook with a new, larger bridge that spanned the banks of the brook. This new bridge was built from wood imported onto the property by landowners and the Club, and measures four feet wide and sixteen feet long. This new bridge was also attached to a new ramp that measured four feet wide and ten feet long. The old bridge was repurposed as a new boardwalk close to the new bridge and ramp. The boardwalk measured two feet wide and eight feet long. The project added a total of 120 square feet to the square footage of the prior stream crossing.

¶ 25. Our precedents explain that de minimis uses are those that are so small and unregulated as to be outside of the scope of a town's zoning regulations, and thus, do not require a permit under those regulations. See In re Scheiber, 168 Vt. 534, 539, 724 A.2d 478 (1998) ("[D]e minimis uses of private property . . . are neither regulated nor contemplated by the zoning regulations."). We have never found a use to be de minimis when zoning regulations directly apply to the use at issue. Cf. Scheiber, 168 Vt. at 539, 724 A.2d at 478 (holding recreational shooting range was de minimis because "Cabot is empowered to regulate recreational shooting activities through its zoning authority, and indeed has chosen to regulate trap and skeet shooting and archery ranges, while remaining silent about target shooting of the kind at issue here"); In re Laberge Moto-Cross Track, 2011 VT 1, ¶ 15, 189 Vt. 578, 15 A.3d 590 (mem.) (holding the moto-cross track as de minimis because "[w]e find no reason to believe [the use] was contemplated . . . by the zoning regulations"). Consequently, "[t]he starting point for our inquiry is to determine if landowners' use of their property falls within the ambit of the town's zoning regulations." Laberge, 2011 VT 1, ¶ 8. This requires a court to first look to the language of the

applicable zoning regulations. Only if the type of use at issue is not covered by the zoning regulations may a court find that there is a de minimis recreational use.

¶ 26. In this case, the language of the zoning regulations clearly demonstrates that the Town intended its regulations to apply to projects like the one at issue. The overarching structure of the regulations indicates a general intent to require permits for land development in the Town. Section 1.3 of the Town of Underhill's Unified Land Use & Development Regulations states that "[n]o land . . . development shall commence in the Town of Underhill except in conformance with these regulations," and § 10.1 states that "[n]o land development . . . may commence in the Town of Underhill until all applicable municipal land use permits and approvals have been issued . . . unless the development is specifically exempt from municipal regulation." Town of Underhill Unified Land Use & Development Regulations §§ 1.3, 10.1 (with amends. through March 3, 2020) [hereinafter ULUDR], https://www.underhillvt.gov/media/7131 [https://perma.cc/8243-X9FL]. The regulations define "[l]and development" as "[t]he construction, reconstruction, conversion, structural alteration, relocation or enlargement of any building or other structure . . . and any change in the use of any building or other structure, land or extension of use of land." Id. § 11.2 (citing 24 V.S.A. § 4303(10)).

¶ 27. The regulations define "[s]tructure" as "[a]n assembly of materials on the land for occupancy or use, including a building, mobile home or trailer, sign, wall or fence." Id. § 11.2. I believe the new bridge, ramp, and boardwalk squarely are structures because they are assemblies of wooden materials constructed, relocated, and enlarged for the use of hikers and bikers to cross Settlement Brook. Consequently, the construction of those structures is, by definition, land development under the zoning regulations.

¶ 28. The Town's intent for the zoning regulations to address uses like the project at issue is evident from the explicit exclusions applicable to the definition of a "structure." The regulations specifically exclude "[i]nfrastructure, such as sidewalks, driveways, roads, parking areas, signs, service lines, and the subsurface components of potable water and sewage disposal systems." Id.

14

§ 11.2. Had the municipality wanted to exclude bridges along with the other types of infrastructure listed, it could have. See Hopkinton Scout Leaders Ass'n v. Town of Guilford, 2004 VT 2, ¶ 8, 176 Vt. 577, 844 A.2d 753 (mem.) (holding that where drafter "includes particular language in one section . . . but omits it in another section . . . it is generally presumed that [it] did so advisedly").

¶ 29.    In addition, the regulations include a section that specifically requires permitting for projects that involve stream crossings or affect waterways. Section 3.19 is designed to protect municipal waterways and requires "[a]ll structures and impervious surfaces" to be set back at least "100 feet from . . . Settlement Brook." ULUDR § 3.19(D)(1). When that is impossible, however, the regulations require that "[a]pplications that include proposed stream alterations or stream crossings shall be referred to the Stream Alteration Engineer at the Vermont Agency of Natural Resources and to the Army Corps of Engineers." Id. § 3.19(C). Therefore, the regulations not only contemplate and regulate structures in and around waterways, they also require multiple other levels of review beyond merely the municipality.

¶ 30.    Furthermore, the regulations identify specific de minimis uses that the Town considers to be exempt from the regulations and, that, therefore, do not require a permit. Id. § 10.2. The regulations make clear that the specific use must be listed to be exempt, stating, "[s]tructures are exempted from these regulations only in accordance with the Act . . . and these regulations (See Section 10.2)." Id. § 11.2. Section 10.2 of the regulations is titled "Exemptions" and states that "[t]he following uses and structures have been determined to impose no impact or a de minimus [sic] impact on the surrounding area and the overall pattern of land development in the town." Id. § 10.2. Relevant to this case, the list of exemptions includes "[t]he normal maintenance and repair of existing structures, utilities and infrastructure which does not result in any expansion or relocation, including any change to the footprint or height of a structure, or a change in use" and "[r]ecreational trails or paths located outside of required stream and wetland buffer areas under Section 3.19 that do not involve or require the development, construction or use of structures or parking areas (e.g., walking, hiking, cross-country skiing and/or snow mobile trails)." Id.

§ 10.2(A)(1); id. § 10.2(A)(6) (citing § 3.19 (describing rules and requirements for land development near surface waters and wetlands)).

¶ 31.   The exemptions quoted above demonstrate that, according to the Town's regulations, projects that enlarge an existing structure, recreational trails within stream buffer areas, and recreational trails that require construction, are not de minimis uses.  Each of these considerations is implicated in the landowner's project to construct the new bridge, ramp, and boardwalk across Settlement Brook.  Therefore, the zoning regulations here apply to the project.

¶ 32.   I want to emphasize that even though the project is regulated by the Town, the regulations do not preclude projects like this bridge, ramp, and boardwalk.  The regulations merely require a review process for them.  See, e.g., id. §§ 5.3 (outlining site plan review), 5.4 (outlining conditional use review), 5.5 (outlining requirements for Development Review Board to waive application requirements and give variances).  Notably, the record demonstrates that, prior to the decision below, landowners and the Club had requested that the Development Review Board review the project and had precured a permit from the Board under the zoning regulations.[2]

¶ 33.   The Environmental Division's decision below, however, voided the permit and incorrectly found the use to be de minimis and therefore not subject to zoning regulations.  In its analysis affirming the Environmental Division's erroneous conclusion, the majority has expanded our historically narrow de minimis exception out of line with our existing precedent.  In doing so, the majority has substituted its judgment for that of the town, creating its own considerations for when a use is de minimis.[3]  This is true even though the municipality has defined what is and what is not de minimis and has affirmatively regulated the use at issue.

---

[2]  I make no judgment on whether the instant project meets the requirements laid out in the town's regulations because the trial court did not consider this issue and I do not believe that this Court should do so in the first instance here.

[3]  The Legislature has given municipalities broad authority to regulate land development including "uses within a river corridor and buffer."  See 24 V.S.A. § 4411(a)(5).

16

¶ 34.     Because the zoning regulations clearly regulate uses like the one at issue, we should reverse and remand this matter to the Environmental Division to consider whether this project should receive a permit under the zoning regulations.   Declaring this bridge and related construction to be a de minimis use is not a proper basis for allowing this project without a permit because of the clear language in the zoning regulations.  The Town of Underhill intended to, and did, regulate uses such as this one in its zoning regulations.  There was nothing more the Town could have done to bring this activity within the reach of the zoning regulations and nothing more was required.

¶ 35.     I respectfully dissent.  I am authorized to state that Justice Johnson joins this dissent.

_____

Associate Justice