2011 VT 1

In re **LABERGE MOTO-CROSS TRACK**

[15 A.3d 590]

No. 09-426

¶ 1. January 6, 2011. The Laberges, landowners, appeal from an Environmental Court decision requiring them to obtain a zoning permit and conditional use approval for a private recreational motocross track they built on their residential property in rural Hinesburg. The Environmental Court reasoned that the network of earthen berms, connected by a single-lane dirt track, constituted a structure for purposes of the local zoning ordinance and thus qualified as the type of land development that would require a permit. Because we do not find the track to be a structure of the type contemplated by the zoning ordinances, we reverse.

¶ 2. In 1999, landowners bought an approximately eighteen-acre lot in the Town of Hinesburg. The lot, upon which they built their house in 2000, is located within the town's Rural Residential II zone. In 2002, landowners began riding motorbikes around their home, initially around the lawn, driveway, and meadow behind their house. In 2004, landowners limited riding to a designated area of about one acre. Repeated use of the motorcycles in the same space began to wear a track over the ground, and over the next two years, they incrementally improved the track, fashioning a series of earthen jumps and berms using a small lawn-tractor to shift on-site excavation materials left over from the earlier construction of their house and driveway. They undertook no additional excavation and brought in no materials from elsewhere. Landowners created the largest of the track's jumps by covering an existing rock pile

with a veneer of dirt. Landowners never obtained a zoning permit for the track, believing one was not needed. At the time of the current controversy, the three-to-four-foot-wide track ran approximately one half mile, snaking over roughly one acre of landowners' eighteen-acre parcel. At its closest point, the track passed within fifty feet of the neighbors' property line.

¶ 3. Landowners' family, friends, and guests used the track extensively after its initial creation. In August 2007, landowners' neighbors, the Fenwicks, sought enforcement of the town's noise-related performance standards, and the town zoning administrator issued a notice of violation for unreasonable noise generated by the motorcycles. On landowners' appeal, the town Development Review Board upheld the notice of violation, finding that the track was not a customary use. The Board, however, acknowledged what it considered to be landowners' "substantial efforts" to reduce noise on the property after the initial notice, including limiting use primarily to family members and confining most riding to a few hours a day, two days a week. Landowners also occasionally used the track on weekends, particularly when weather prevented use of the track on scheduled days. Neither party further appealed this decision.

¶ 4. In 2008, neighbors asked the town zoning administrator to require landowners to obtain a zoning permit and conditional use approval for the backyard track. After the zoning administrator denied the request, neighbors appealed to the town Development Review Board, which determined that the "degree of improvements to the Laberge property simply [did] not rise to the level of requiring a zoning permit for 'land development,'" nor did the track or its contemporary use constitute a change in the residential character of the property. In its decision, the Development Review Board specifically noted that the neigh-borly dispute was more properly characterized as a dispute over noise, which the town addressed in 2007. Following that 2007 decision, the noise level at the track had dropped significantly, and the town had received no further complaints.

¶ 5. Neighbors appealed the Development Review Board's decision to the Environmental Court. After a de novo trial, the Environmental Court determined that the track was not generally prohibited under the town's zoning regulations. Nevertheless, the court found that the track was a "structure," the construction of which constituted land development and thus required a zoning permit. The court further determined that because the track was not a specifically permitted use in the Rural Residential District II, landowners were required to obtain conditional use approval, apparently as an "outdoor recreational facility." Landowners appealed.

¶ 6. On appeal, landowners contend the Environmental Court erred in requiring a zoning permit for the track because it is an incidental recreational use not covered by the permitting requirements of the zoning ordinance. More specifically, landowners maintain that the track is not the type of "structure" contemplated by the town's zoning ordinance, and its creation did not rise to the level of land development that would necessitate zoning review. In the alternative, they argue that even if a motorcycle trail were a zoneable structure, conditional-use approval would not be required because riding motorcycles on a residential property should be a permitted customary accessory use. Lastly, landowners maintain that the court erred in its apparent conclusion that the track required a conditional use approval as an "outdoor recreational facility" because such facilities suggest more extensive development and greater ongoing use.

¶ 7. In reviewing the environmental court's interpretation of a local zoning

ordinance, we apply a deferential standard. *In re Champlain College Maple Street Dormitory*, 2009 VT 55, ¶ 13, 186 Vt. 313, 980 A.2d 273 ("On review, we will uphold the Environmental Court's construction of an ordinance unless it is clearly erroneous, arbitrary or capricious." (quotation omitted)). In light of the statutory language at issue and our precedent, we find that the Environmental Court was correct in ruling that the track is not prohibited, but reverse the court's ruling because landowners' particular motorbike track does not require a zoning permit as it is a de minimis incidental use of property.

¶ 8. The starting point for our inquiry is to determine if landowners' use of their property falls within the ambit of the town's zoning regulations. We review zoning ordinances according to the general rules of statutory interpretation. *In re 232511 Investments, Ltd.*, 2006 VT 27, ¶ 7, 179 Vt. 409, 898 A.2d 109. Thus, we construe an ordinance's "words according to their plain and ordinary meaning, giving effect to the whole and every part of the ordinance. If there is no plain meaning, we attempt to discern the intent from other sources without being limited by an isolated sentence." *Champlain College*, 2009 VT 55, ¶ 13 (citation and quotations omitted). "We adopt a construction that implements the ordinance's legislative purpose and, in any event, will apply common sense." *In re Lashins*, 174 Vt. 467, 469, 807 A.2d 420, 423 (2002) (mem.) (citation and quotation omitted). Furthermore, zoning laws are to be strictly construed in favor of property owners. See *Champlain College*, 2009 VT 55, ¶ 14.

¶ 9. Under Hinesburg's zoning regulations, a zoning permit must be obtained before engaging in any activity constituting land development or a substantial change in use. Town of Hinesburg Zoning Regulations [hereinafter Zoning Regulations] § 4.1.1 (2005) ("No person shall undertake any *land development* as de-

fined in Section 9.1 of this Regulation or a *change in use* . . . without a valid zoning permit issued by a Zoning Administrator." (emphases added)). The definition of land development includes "the construction, reconstruction, conversion [or] structural alteration . . . of any building or other *structure*." Zoning Regulations § 9.1 (emphasis added). A zoning permit is specifically required when someone "[c]onstructs, places or relocates a structure" or "[s]ubstantially changes or expands the use of lands." *Id.* § 4.1.1(1), (2). Thus, there are two key questions to address: (1) whether the track was a structure and, if not, (2) whether it constituted a substantial change in the use of the property.

¶ 10. The zoning regulations define "structure" as "anything constructed, erected, or placed and which requires a fixed location on the ground in order to be used, including, but not limited to, a building in excess of 100 square feet, mobile home or trailer, signs, manure lagoons and pits, silos, tennis courts, and swimming pools with an area greater than 100 square feet." *Id.* § 9.1. It exempts "sidewalks, patios, driveways, utility poles, compost bins, steps, planters, fences, or temporary docks or floats" from the definition. *Id.*

¶ 11. In its decision, the Environmental Court relied on the size of landowners' backyard track as a decisive factor in ruling the track a structure. The court found specifically that the area covered by the track was greater than 100 square feet and noted that "a sizeable amount of earth material was relocated on the property, specifically for the berms and the jumps and the like." These are certainly factors to be considered, but those findings alone cannot support a determination that the backyard track represented the type of structure contemplated by the town's zoning ordinance, particularly when considered in light of the significant differences between landowners' recre-

ational track and the types of structures requiring a permit specifically enumerated in the zoning regulations. To begin with, the structures contained in the list — which includes among other things buildings, mobile homes, tennis courts, silos, and pools larger than 100 square feet — all run the risk of altering the character of the property to a significant degree. Their construction would require the use of building materials such as concrete, asphalt, metal, or wood. In contrast with these structures, almost all of which would be of a semi-permanent nature and would need materials to be imported onto the property, landowners' track was created through the incidental erosive impact of the motorbikes' tires and the subsequent movement of dirt already located on the property. Second, many of the permit-requiring structures on the town's list either pose independent health and safety risks — as with manure lagoons — or create the potential for increased vehicular traffic to and from the property, as would be the case with a mobile home. Here, there has been no suggestion that landowners' recreational moto-cross track threatens the health or safety of surrounding neighbors, nor does its private residential use threaten to increase vehicular traffic to and from the property. Ridership is, in fact, limited primarily to landowners' immediate family.

¶ 12. The modifications to landowners' property are much more akin to those items specifically excluded from the zoning regulations' definition of "structure." Among other things, the zoning regulations exempt patios ("[a] surface built at grade without a foundation or pier support"), driveways, and sidewalks. Zoning Regulations § 9.1. As with a patio, driveway or sidewalk, landowners' backyard track rests directly atop the earth without a foundation and only required minimal excavation. Here, it is evident that the town did not intend to require a permit for a lightly modified motorcycle track

essentially created by riding the bikes, which is only used privately and rests exclusively on landowners' property. To accept the Environmental Court's definition of structure would subject to zoning review a multitude of de minimis residential activities never intended to be covered by zoning regulations. Activities such as covering a pile of unsightly rocks with dirt, or clearing a private path for walking, hiking, or cross-country skiing, or terracing garden beds larger than ten-feet by ten-feet would suddenly require municipal permission. This is not the purpose of the ordinance's language.

¶ 13. Turning to the question of whether the track constitutes a substantial change in use, it is important to recognize that landowners would be able to ride their motorcycles anywhere on their own property — provided they complied with existing noise and nuisance performance standards — without a permit. The aggregation of dirt and tire-wear on their lawn does not constitute a substantial change. Indeed, the Environmental Court observed that, "if the track didn't exist, absent some argument that's not yet been made today in court, the same use of landowners' property could be had possibly without a zoning permit, most likely without a conditional use approval." It follows that if the track is not a structure for the purposes of zoning, landowners' otherwise permissible use of their property does not become a "substantial change of use" absent facts not at issue in this case, e.g., making the track public or using it for commercial purposes.

¶ 14. While this ends our direct inquiry, we note one final issue raised by neighbors. The Environmental Court correctly ruled that the track is not generally prohibited by the Hinesburg zoning ordinances. It erred, however, in reasoning that the track had to qualify as a permitted customary accessory use to a residential use or as a conditionally approvable

"outdoor recreational facility."* While it is true that the town's zoning regulations contain a restrictive clause indicating that all uses that are not expressly permitted are prohibited, Zoning Regulations § 2.1, we have recognized that such regulations cannot be considered to be entirely exhaustive, given the breadth of novel land-development possibilities a municipal body may face. See *In re Scheiber*, 168 Vt. 534, 539, 724 A.2d 475, 478 (1998) (affirming that private shooting range was not a zoneable structure even when regulations were silent on the subject and zoning ordinance contained a restrictive clause); see also *Town of Salem v. Durrett*, 480 A.2d 9, 10 (N.H. 1984) (recognizing "the impossibility of providing expressly by zoning ordinance for every possible lawful use"); *Tanis v. Twp. of Hampton*, 704 A.2d 62, 68 (N.J. Super. Ct. App. Div. 1997) (ruling that restrictive clause alone was not enough to prohibit use not expressly contemplated in local zoning ordinance in part because of "the impracticality of defining in advance every permissible accessory use").

¶ 15. Our ruling in *Scheiber* is instructive on this point. There, we determined that a landowner's construction of a shooting range, which included the removal of trees and construction of "an earthen backstop or berm," did not re-

---

* Section 5.8.1(2) of the Zoning Regulations defines permitted customary accessory uses, in relevant part, as "customary uses incidental to residential use, such as private garages, garden houses, tool houses, playhouses." Meanwhile, a conditionally approvable use must fall into one of thirteen categories. See Zoning Regulations § 3.3.3. Among these categories, the only one potentially applicable to the present case is "[o]utdoor recreational facilities, which do not require large support structures, such as fishing and hunting preserves, and cross-country ski trails." *Id.* § 3.3.3(4).

quire a zoning permit. *Scheiber*, 168 Vt. at 535, 724 A.2d at 476. We affirmed the trial court noting that "certain recreational activities, such as target shooting of the kind in question, are de minimis uses of private property which are neither regulated nor contemplated by the zoning regulations." *Id.* at 539, 724 A.2d at 478. We based this holding, in part, on the understanding that the "primary purpose of zoning is to manage municipal and regional growth and development in an organized fashion, not to regulate the incidental recreational activities of private property owners." *Id.* at 538, 724 A.2d at 478; see 24 V.S.A. § 4302(a) (purpose of Vermont Planning and Development Act to encourage appropriate municipal and regional development). Landowners here have sought recreational pursuits similar to those we approved in *Scheiber* and in some ways have made an even smaller impact. They have not felled any trees nor built any structures. Their track required minimal construction and no excavation or importation of materials, it is limited to personal family use, and it is essentially adjunct to an otherwise permissible recreation activity. We find no reason to believe it was contemplated for exclusion by the zoning regulations. That said, if use of the track expanded beyond family — certainly if it ever were used by the public — or if landowners chose to increase the track's size or scope, it would likely be more closely considered a structure or a substantial change in use within the meaning of the Zoning Regulations.

¶ 16. In closing, we note that the primary source of friction between these neighbors revolves around the noise created by the motorbikes. All of landowners' neighbors are entitled to quiet enjoyment of their property as much as landowners are entitled to the benefits of the recreational uses of their own. The balance between the parties' competing conceptions of enjoyment is a difficult one, but

one that was struck in this case through the application of local noise-related performance standards, with which landowners appear to now be complying. See Zoning Regulations § 5.12 ("No land or building shall be used or occupied in any manner so as to create any dangerous, injurious, noxious, or objectionable hazards by nature of . . . noise . . . ."). The town's zoning regulations cannot now be used to exact further concessions from landowners' recreational use of their motorbikes by making a zoneable mountain out of a private moto-cross track. If neighbors experience a problem with unreasonable noise from landowners' track, they are well within their right to file a complaint in accordance with town's noise performance standards or request a specific change in the town's zoning bylaws.

*Reversed.*

Motion for reargument denied February 7, 2011.