STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Vermont Unit | ENVIRONMENTAL DIVISION<br>Docket No. 164-12-13 Vtec |
| Laberge NOV | DECISION ON THE MERITS |

This appeal arises from a notice of violation issued by the Town of Hinesburg Zoning Administrator ("the Zoning Administrator") citing Matt and Judy Laberge ("the Laberges") for violating Subsection 5.12 of the Town of Hinesburg Zoning Regulations ("the Regulations"). The notice of violation was prompted by noise complaints from neighboring landowners Gary and Fiona Fenwick ("Appellants"), who complained of noise exceeding an intensity of 80 decibels ("dBA") at the property line for ten to fifteen seconds every five minutes over the course of one to two hours on three dates in the summer of 2013. The noise was caused by the use of two off-road or "motocross" motorcycles. The Laberges appealed the Town's NOV to the Town of Hinesburg Development Review Board ("the DRB"). When the DRB found that the Laberges' motorcycle use during the summer of 2013 constituted a "usual and customary residential activit[y]" and was not in violation of Subsection 5.12.1 of the Regulations regarding noise restrictions, Appellants filed a timely appeal with this Court.

As the parties prepared for trial, the Laberges filed a motion for summary judgment, which this Court denied by written Entry Order. Laberge NOV, No. 164-12-13 Vtec, slip op. (Vt. Super. Ct. Envtl. Div. Jan. 8, 2015) (Durkin, J.). After the parties completed their trial preparations, the Court conducted a single-day merits hearing at the Costello Courthouse in Burlington, Vermont on January 15, 2015.[1] The Laberges and their attorney, Brian P. Hehir, Esq.; Appellants and their attorney, Claudine C. Safar, Esq.; and the attorney for the Town, Ernest N. Allen, Esq., attended the merits hearing. Due to other commitments and administrative matters, the Court delayed the research, deliberation, and drafting required to

---

[1] No site visit was conducted prior to this merits hearing. The Court conducted a site visit in connection with an earlier appeal—In re Laberge Moto-Cross Track, No. 259-11-08 Vtec (Vt. Envtl. Ct. Oct. 12, 2009)(Durkin, J.), reversed 2011 VT 1, ¶ 8, 189 Vt. 578—and therefore decided, after consultation with the parties, that a site visit in connection with this subsequent appeal was not warranted.

complete this Merits Decision, for which the Court offers apologies to the parties and their counsel.

Based upon the evidence admitted at trial, which was put into context by the site visit that the Court conducted in a previous appeal in 2009, the Court renders the following Findings of Fact and Conclusions of Law, as well as the Judgment Order that accompanies this Merits Decision:

**Findings of Fact**

1.     The Laberges and Appellants own adjoining parcels of land along Hayden Hill Road in the Town of Hinesburg ("Town").  Each family uses their respective property as their primary residence.

2.     The Laberges maintain a motocross track on their property.

3.     The parties' properties are located in a rural section of the Town, in the Rural Residential II Zoning District.  The properties are mostly wooded, particularly Appellants' property, except for the areas surrounding their homes and, in the instance of the Laberges, the area where they maintain the motocross track.  See Appellants' Exhibit 8.[2]

4.     The Laberges' motocross track is situated near the parties' shared boundary line.  Id.

5.     The Laberges' property and their use of it was the subject of a prior proceeding before this Court and the Vermont Supreme Court: In re Laberge Motocross Track, No. 259-11-08 Vtec (Vt. Envtl. Ct. Oct. 12, 2009)(Durkin, J.), reversed 2011 VT 1, ¶ 8, 189 Vt. 578.  While that appeal and the current appeal each concern the Laberges' use of a motocross track on their property, the two appeals address different legal disputes: the prior appeal concerned the assertion that the Laberges' motocross track required a zoning permit to be established and used, while the pending appeal concerns a claim that the noise caused by the Laberge family members' use of their track exceeded the standards established in the Zoning Regulations.

6.     The pending appeal arose from a notice of zoning violation given by the Zoning Administrator via a letter addressed to the Laberges and dated July 31, 2013.  A copy of that letter (hereinafter referred to as the "2013 NOV") was admitted at trial as Appellants' Exhibit 4.

---

[2] Appellants' Exhibit 8 is a copy of an aerial photo captured from the website Google Earth, admitted at trial for context purposes only.

7.      In the 2013 NOV, the Zoning Administrator alleged that the Laberges had violated Section 5.12 of the Regulations by causing "unreasonable noises" to emanate from their property. Id. at 2. Specifically, the Administrator alleged that on July 22, 2013, the two motocross motorcycles being ridden on the Laberge property were causing noises "in the high 80Db [sic] range . . . [for] approximately 10 to 15 seconds, . . . every five minutes" for the approximately two hours that the Administrator was present. The Administrator reported that he had been advised by the Appellants that the Laberges' motorcycles had also been operated at a similar frequency and noise level on June 3 and July 7. He concluded that "[t]he combination of all of these factors has created an unreasonable noise." Id.

8.      The Zoning Administrator visited the area on July 22, 2013, at the request of Appellants. During his visit, two of the Laberges' sons began operating their motorcycles on the Laberge motocross track. At the time, the Zoning Administrator and Appellants were standing on Appellants' land near their common boundary line with the Laberges. While there, the Administrator and one of the Appellants monitored the noise levels emitted by the motorcycles using a sound meter purchased by Appellants.

9.      The Laberges continued to ride the motorcycles for between one to two hours. During their riding, the motorcycle noises were the loudest as they circled the motocross track and came closest to the parties' common boundary line. The uncontradicted evidence was that the motorcycle noise levels exceeded 80 dBA when the motorcycles were closest to the common boundary line.

10.     Due to the manner in which the two Laberge sons drove their motorcycles, the resulting noise exceeded 80 dBA for a period of ten to fifteen seconds every five minutes.[3] As noted above, this riding sequence continued for a period in excess of one hour.

11.     To give context to the level of noise emitted by the Laberge motorcycles, Mrs. Fenwick credibly described the noise levels as "extremely loud, irritating, assaultive, and disruptive."

12.     Appellants' noise expert, Mr. David Wechsler, installed noise meters on Appellants' property, as noted by the yellow dots on Exhibit 8. Mr. Wechsler confirmed, based upon the

---

[3]  One might assume that the five minute intervals were due to the size and proximity of the track, as well as the speed at which the Laberges' sons travelled along the track, but no specific evidence on these points was offered at trial.

results of his noise meters, that the motorcycles ridden on the Laberge track resulted in noises at Appellants' property in excess of 80 dBA.

13. Mr. Wechsler provided further context for the impact of noises in excess of 80 dBA by credibly testifying that when noises in excess of 80 dBA are present in an industrial setting, the industry standard is to require ear protection to be used by all area workers.

14. The Zoning Administrator was only present on Appellants' property to witness the motorcycle noises on July 22, 2013. However, during conversations that day, Mr. Laberge confirmed that his two sons had also ridden their motorcycles in a similar fashion, with similar noise levels resulting and for similar duration, on June 3 and July 7, 2013.

15. The Laberges' sons ride motorcycles regularly on their motocross track, although the frequency of their rides has diminished over the last seven or so years. Their sons still compete in motocross, although not as frequently as they once did. As a consequence, the Laberges do not use their motocross track for racing practice as often as they once did.

16. When the Laberges' sons were more active in motocross racing, they would also often invite their friends, some of whom were fellow racers, to practice on the Laberges' motocross track. During those times, the noises emanating from the Laberge track were as loud or louder than in June and July, 2013, and occurred more frequently in prior years than they occurred in 2013.

17. There is no set schedule to the Laberges' use of their motocross track. While the parties have made sincere efforts to come to a mutually agreeable schedule for use of the motocross track, they have been unsuccessful. Most recently, Appellants have declined the Laberges' suggestions at establishing an agreeable schedule for use of the Laberge motocross track.

18. The Laberges did not provide prior notice to Appellants of their intent to use the motocross track and cause noises in excess of 80 dBA during June and July, 2013.

19. Six years earlier, in 2007, the Zoning Administrator issued and the DRB upheld a Notice of Violation to the Laberges for violating the Town's then-existing noise-related performance standards due to motorcycle use. The Laberges chose not to appeal the DRB's adverse ruling on this 2007 notice.

4

20. The 2013 NOV was the first issued to the Laberges since 2007. No other NOV had been issued to the Laberges since then and through the time of trial.

21. The vast majority of property owners in Town do not operate motorcycles or ATVs on their residential property. There have been no other noise complaints received by the Zoning Administrator or notices of zoning violations issued by him concerning motocross bikes or ATVs ridden on any other residential property in Town.

22. After the Zoning Administrator issued his 2013 NOV, the Laberges filed a timely appeal with the DRB, which overruled the Administrator and voided the 2013 NOV. Appellants thereafter filed a timely appeal with this Court, challenging the DRB's decision that the 2013 NOV should not issue.

## Conclusions of Law

Appellants argue that the Laberges' use of off-road motorcycles is in violation of the Performance Standards in Section 5.12 and Subsection 5.12.1 of the Regulations. Section 5.12 prohibits the use of land "in any manner so as to create any dangerous, injurious, noxious, or objectionable hazards by nature of smoke, noise, dust, odor, or vibration." Subsection 5.12.1 elaborates on this prohibition as it relates to noise,[4] and prohibits "[u]nreasonable noises," as measured by "factors such as intensity, duration, and frequency (i.e., how often it occurs)." Subsection 5.12.1 also contains an exception for "usual and customary residential activities or property maintenance."

Appellants' Statement of Questions tracks the legal standards in Section 5.12. Appellants ask:

1. Whether the dirt biking and/or motocross use of Matt and Judy Laberges' property violated the Performance Standards in § 5.12.1 of the Town of Hinesburg Zoning regulations.

2. Whether the Laberges' dirt biking and/or motocross use of their property constitutes unreasonable noise as defined in Regulations.

---

[4] The evidence presented only concerned the noises emanating from the Laberges' motorcycles; there was no complaint suggesting that objectionable "smoke, . . . dust, odor, or vibration" was being created, nor was there evidence presented that the motorcycle noises "create[d] any dangerous, injurious, [or] noxious . . . hazards." Our focus therefore remains on the level of noise emanating from the Laberges' property, as measured at the parties' shared property boundary.

3. Whether the Laberges' dirt biking and/or motocross use of their property constitutes a usual and customary residential activity, particularly in light of this Court's determination in In re Fowler, No. 159-10-11 Vtec, slip op. (Vt. Super. Ct. Envtl. Div. Feb. 4, 2013) (Durkin, J.).

(Appellants' Notice of Appeal and Statement of Questions at 1–2, filed Dec. 20, 2013. Thus, the Court must first determine whether the noise associated with the Laberges' use of their motocross motorcycles is unreasonable, based on its intensity, duration, and frequency, then whether use of off-road motorcycles is "usual and customary residential activity."

We note that we interpret a zoning ordinance using the familiar rules of statutory construction and will "construe words according to their plain and ordinary meaning, giving effect to the whole and every part of the ordinance." In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262. We will therefore "'adopt a construction that implements the ordinance's legislative purpose and, in any event, will apply common sense.'" In re Laberge Moto-Cross Track, 2011 VT 1, ¶ 8, 189 Vt. 578 (quoting In re Lashins, 174 Vt. 467, 469 (2002) (mem.)). Thus, in order to answer the overarching question of whether the Laberges have violated the noise ordinance (Question 1), the Court must first determine whether the noise associated with the Laberges' motorcycles is unreasonable, based on its intensity, duration, and frequency (Question 2), and, if so, whether use of off-road motorcycles is a "usual and customary residential activity" (Question 3).

I.      **Unreasonable Noise**

Subsection 5.12.1 prohibits "[u]nreasonable noises," and states:

A determination of "unreasonable" shall include factors such as intensity, duration, and frequency (i.e., how often it occurs). No noise other than noises that would be part of the normal coming and going by occupants shall be discernible at property lines during the following hours . . . before 6:00 a.m. or after 10:00 p.m. on weekdays or before 8:00 a.m. or after 9:00 p.m. on weekends. The Development Review Board may permit noises at other times, as a conditional use if it finds that reasonable steps have been taken to accommodate adjoining property owners, and if it finds that it is reasonable to permit noise at other times. This Section 5.12.1 shall not be construed to prohibit usual and customary residential activities or property maintenance.

Regulations § 5.12.1. Nowhere in the Regulations, however, is there further guidance or standards to rely on when considering the intensity, duration, or frequency of noise.

When faced with a challenge to an ordinance, we begin with the presumption that a zoning regulation is constitutional. In re Highlands Development Co., LLC, No. 194-10-03 Vtec, slip op. at 13 (Vt. Envtl. Ct. Feb. 2, 2010) (Wright, J.) Despite this presumption, we will invalidate a regulation if it is so vague that it fails to adequately notify a landowner of what she may or may not do (a due process violation), or so standardless that it encourages arbitrary and discriminatory enforcement (an equal protection violation). In re Pierce Subdivision Application, 2008 VT 100, ¶ 19, 184 Vt. 365. In determining whether a land-use ordinance is unconstitutionally vague, courts must balance the landowner's need for clarity with the municipality's need for flexibility. See Town of Westford v. Kilburn, 131 Vt. 120, 124 (1973). Accordingly, we read land-use regulations in their greater context; even if the specific provision at issue does not provide a clear standard, if the overall regulatory scheme imposes a clear purpose and standard, the ordinance will be upheld. Pierce Subdivision, 2008 VT 100, ¶ 24.

For the following reasons, we conclude that the ordinance is not void for vagueness and that the noises that resulted from the Laberges' use of their motocross track on June 3, July 7, and July 22, 2013 were unreasonable. As to the vagueness of the Regulation, the Court considers it, taken in context, to strike an appropriate balance between notice to the landowner and flexibility for the municipality. Subsection 5.12.1 is not totally standardless—it informs landowners what factors the municipality will use to determine whether their noise is "unreasonable," to wit, "intensity, duration, and frequency (i.e., how often it occurs)." Given that this provision appears in the context of a series of standards regulating competing uses of land, a landowner should conclude that the municipality will apply a common-sense standard of what is "reasonable" for the community, within the context of the stated standards. As to the reasonableness of the noise from the Laberge property, we conclude that, first and foremost, the level of noise is excessive, especially for a residential setting, particularly when such a noise level often warrants hearing protection in a more industrial setting. While the Town declined to establish a specific decibel limit for noises, we note that the 80 dBA level of noise experienced here is as much as 10 dBA higher than the highest specific decibel limit that the undersigned has observed in any Vermont zoning regulation presented to this Court for noises registered at a residential boundary line or living place. See, e.g., In re Fowler, No. 159-10-11

7

Vtec, slip op. at 4 (Vt. Super. Ct. Envtl. Div. Feb. 4, 2013) (Durkin, J.) (applying noise ordinance from Richmond, Vermont that prohibited noises above 70 dBA). That means that the noise recorded at Appellants' property line was likely twice as loud as what has been deemed the limit of reasonable noises in other municipalities.[5] Also, our conclusion of unreasonableness is premised upon the duration and frequency with which the noises were repeated: for ten to fifteen seconds every five minutes, for up to two hours at a time. While the motorcycle noise did not occur as frequently in June and July, 2013 as in the past, including in 2007 when the Laberges received the notice of violation that they chose not to challenge, we rely upon the intensity and duration of the noise in 2013 to conclude that such noises were unreasonable for this rural residential setting. For these reasons, we conclude that the complained-of noises were unreasonable.

## II.     Usual and Customary Residential Activities

Although Subsection 5.12.1 prohibits unreasonable noises, it specifically exempts "usual and customary residential activities or property maintenance." Yet, the Regulations do not define or provide examples of "usual and customary residential activities." In examining zoning ordinances, the Vermont Supreme Court has stated that the "[u]se of residential property includes more than the use of a house and grounds for food and shelter"; it must include uses for "'recreational advantages of the family,'" of which the "'[p]ursuit of a hobby is clearly a customary part.'" In re Scheiber, 168 Vt. 534, 538–39 (1998) (quoting Borough of Chatham v. Donaldson, 174 A.2d 213, 216 (N.J. Super. Ct. App. Div. 1961)). The Scheiber Court's reasoning, however, was grounded in the fundamental purpose behind pure zoning regulations (i.e., regulations limiting particular uses to particular geographic zones). The primary purpose of zoning regulations is to "manage municipal and regional growth and development in an organized fashion, not to regulate the incidental recreational activities of private property owners." Id. at 538.

---

[5] The Court takes judicial notice of the variety of means by which noise may be measured, particularly when measuring the duration of the noise. See, In re Lathrop Ltd. P'ship, Ltd., Nos. 122-7-04 Vtec, 210-9-08 Vtec, and 136-8-10 Vtec, slip op. at 33–34 (Vt. Super. Ct. Envtl. Div. Oct. 18, 2013) (Durkin, J.), aff'd in part and rev'd in part, 2015 VT 49. One factor about noise measurement that has helped the Court put specific noise levels into perspective is that "the nature of decibel measurement equates to a doubling of the noise level with every 10 dBA increase in the level of that noise." Id. at 34.

The present case, however, deals with a noise ordinance, and a noise ordinance's primary purpose is to regulate the activities of private property owners. As the Vermont Supreme Court indicated in its earlier decision regarding the Laberge motocross track, noise ordinances attempt to strike the difficult balance between private property owners' "competing conceptions of enjoyment." In re Laberge Moto-Cross Track, 2011 VT 1, ¶ 16, 189 Vt. 578.[6] As such, noise ordinances are a more appropriate venue for regulating specific uses of private property, and do not necessarily provide as much leeway for incidental recreational uses of private property as pure zoning regulations. See id.

In In re Fowler, this Court attempted to strike a balance between landowners' competing claims, and considered whether the use of dirt bikes, specifically, satisfied the exception in the Town of Richford's performance standards, which "allow[ed] activities that cause noise in excess of 70 decibels at the property line if the noise is the result of occasional, customary activities associated with an allowed use," such as "lawn mowing or garden cultivating." No. 159-10-11 Vtec, slip op. at 4 (Vt. Super. Ct. Envtl. Div. Feb. 4, 2013) (Durkin, J.) (internal quotation marks omitted). The Court concluded that the Richmond ordinance was primarily aimed to exempt property maintenance activities and that, even though it is a generally lawful use of private property, dirt bike riding is not a customary activity associated with the allowed use of the residential property. Id. at 5–6. Although this Court in Fowler stressed the term "associated with an allowed use" in the Richmond ordinance, id. at 4—language that is absent from the Hinesburg Regulations—we nonetheless consider the Fowler case instructive here. While dirt biking and motocross riding may be the kinds of recreational activities included in "residential uses" for zoning purposes, they are not so customary and incidental to residential use that they can escape the limits of a noise ordinance specifically designed to regulate the competing claims of neighbors. Furthermore, we received no credible

---

[6] While the language quoted here provides guidance, we note that while the Supreme Court's 2011 decision considered this same motocross track on the Laberges' Hinesburg property, that prior appeal did not directly address noise impacts. Rather, the Fenwicks alleged that the Laberges' motocross track was a "structure" under the applicable ordinance, thereby requiring a zoning permit. When this Court concurred, the Laberges appealed to the Vermont Supreme Court; that Court reversed, concluding that the Laberges' track was not "a structure of the type contemplated by the zoning ordinances." Id. at ¶ 1.

Subsequent to the Court's 2011 ruling in Laberge I, the Town amended its Zoning Regulations; those amendments included the noise provisions which are the subject of these proceedings.

evidence that the repeated riding of motocross motorcycles was a usual and customary practice in Town, nor did we receive credible evidence that such practices on a motocross track, especially in a primarily residential district, are generally recognized as a usual and customary use of residential property in this rural Vermont setting. It is for these reasons that we conclude that the complained-of activities on the Laberges' property <u>do</u> <u>not</u> fall within the exception stated in Subsection 5.12.1 of the Regulations.

## Conclusion

Because the credible facts lead us to conclude that the Laberges' use of motocross racing motorcycles on June 3, July 7 and July 22, 2013 in the manner specified caused unreasonable noises due to the intensity, duration, and frequency of that use, and because that use is not a usual and customary residential activity, we conclude that the Laberges were in violation of the Regulations. We therefore **AFFIRM** the Notice of Violation issued to the Laberges on July 31, 2013 by the Town of Hinesburg Zoning Administrator.

Our conclusion here does not prohibit the parties from arriving at a reasonable schedule by which the Laberge family members may make use of their motocross track in a manner that will not cause unreasonable noises or other disturbances to their neighbors that would otherwise be an actual violation of the Zoning Regulations. Our decision here also does not pass judgment upon the wisdom of pursuing enforcement actions against the Laberges for the noticed noise violation.

This completes the current proceedings before this Court. A Judgment Order accompanies this Merits Decision.

Electronically signed on October 15, 2015 at Burlington, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Judge
Environmental Division