Filed 09/15/25



VERMONT SUPERIOR COURT
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT 05401
802-951-1740
www.vermontjudiciary.org

ENVIRONMENTAL DIVISION
Docket No. 24-ENV-00110

---

| | |
|---|---|
| **600 Waits River Road Zoning Permit Application** | **MERITS DECISION** |

---

This is an appeal of a decision by the Town of Bradford (the Town) Development Review Board (DRB) dated November 18, 2024, denying Patriot Holdings, LLC's (Applicant) application for site plan and conditional use review for a contractor building and 5 self-storage buildings on a lot located at 600 Waits River Road, Bradford, Vermont.

The Court held a merits hearing in this matter on August 22, 2025 via the WebEx platform. Applicant Patriot Holdings, LLC was represented by Attorney Robert Best, appearing *pro hac vice*. The Town was represented by Attorney Nicholas Low.

### Statement of Questions

Applicant filed an Amended Statement of Questions on March 19, 2025, presenting seven Questions for this Court's review. Those Questions are as follows:

1. Whether [Applicant's] Application meets applicable general standards for design review, set forth in Chapter 2 of the 2019 Zoning Bylaws of the Town of Bradford, Vermont.

2. Whether [Applicant's] Application meets applicable Lower Plain District Access Management standards set forth in Section 5.1 of the 2019 Zoning Bylaws of the Town of Bradford, Vermont.

3. Whether [Applicant's] Application meets applicable Lower Plain District Design Review Standards set forth in Section 5.2 of the 2019 Zoning Bylaws of the Town of Bradford, Vermont.

4. Whether the Applicant's proposed use is permitted in the Lower Plain zoning district pursuant to the 2019 Zoning Bylaws of the Town of Bradford, or in the alternative, whether the Applicant's proposed use meets the standards to be granted a variance pursuant to section 6.5 of the 2019 Zoning Bylaws of the Town of Bradford, Vermont.

1

5. Whether the Applicant's Application meets the standard for a variance pursuant to Section 6.5 as to the maximum front setback of 60 feet established pursuant to Section 7.0 of the 2019 Zoning Bylaws of the Town of Bradford, where the Applicant's lot is burdened by easements which prevent most development within the maximum setback.

6. Whether approval of the Applicant's Application is foreclosed as a result of a prior denial of a materially different application for this site and from this Applicant in 2022.

7. Whether the Applicant's overall Application ought to be approved pursuant to the 2019 Zoning Bylaws of the Town of Bradford, Vermont and the Town of Bradford's Town plan.

Amended Statement of Questions (filed Mar. 25, 2025). At trial, Applicant withdrew Question 5.

## Findings of Fact

1. This is an appeal by Patriot Holdings, LLC (Applicant), from a November 18, 2024 decision of the Town of Bradford (the Town) Development Review Board (DRB)[1] denying its application for site plan and conditional use approval to develop a "Contractor Building," so-called, and five (5) self-storage buildings on a 3.63-acre parcel of open land located at 600 Waits River Road (VT Route 25) in the Town's Lower Plain zoning district (Tax Map # 9-57-340) (the Property).[2]

2. The Property is owned by Waits River Storage, LLC, a business entity that is affiliated with and/or related to the Applicant.

3. Bradford Mini Storage, LLC, another business entity affiliated with Applicant, owns land immediately to the east of the Property that has been developed with self-storage units in six separate buildings. Town's Exhibit 4.

4. The Property has 361.7 feet of frontage on Waits River Road (VT Route 25).

5. The Applicant proposes to construct six buildings on the Property, consisting of a 7,500 square foot Contractor Building and five self-storage buildings, ranging in size from 4,650 square feet to 7,500

---

[1] Development review in the Town is now conducted by the Development Review Board rather than the (former) Zoning Board of Adjustment and Planning Commission. Thus, the DRB is the "Appropriate Municipal Panel" (AMP) for development review in the Town under the applicable regulations.

[2] Applicant's Notice of Appeal states that it is appealing from the denial of its "application for site plan and variance approval under the Bradford Zoning Bylaws." While the DRB's November 18 decision does reference a variance in its final paragraph, it is not clear that the Applicant ever applied for a variance or that a variance was warned for hearing by the DRB, as required by 24 V.S.A. § 4464.

square feet.[3] The combined "footprint" of the proposed buildings is 35,750 square feet. The project is not proposed as a Planned Unit Development.

6. The proposed lot coverage is 60.2 percent.

7. In addition, the Applicant proposes to construct a paved access drive, 22 to 24 parking spaces adjacent to and north of the Contractor Building, and access aisles to facilitate circulation between and around the self-storage units, as well as chain-link fencing, gates, lighting and stormwater management facilities.

8. The Contractor Building, which is oriented so that its length runs parallel to Waits River Road, is proposed to be 50 feet wide and 150 feet long, with a height of 25 feet to the eves and 32 feet to the roof peak.

9. The 5 self-storage buildings, as proposed, will be oriented with their length running north-south, such that their southerly gable ends will generally face Waits River Road. The self-storage buildings are single-story, with an eve height of approximately 10 feet and a roof peak height of 16 feet.

10. The southwest corner of the Contractor Building is the closest to Waits River Road and is set back 108.2 feet from the road's centerline.

11. The proposed stormwater management area, fencing, landscaping and underground electric service are located between the Contractor Building and Waits River Road.

12. The self-storage buildings are located varying distances to the north of the Contractor Building (i.e., further from Waits River Road). The self-storage buildings are further than 10 feet from the side and rear lot lines.

13. The Property is burdened by a utility easement in favor of the Town located on its southerly side, adjacent to Waits River Road, in which the Town has an existing sewer line. Applicant proposes to connect the Contractor Building to the sewer line, as well as to municipal water service.

14. The Property is bordered to the east and west by other commercial properties, including an auto parts store, a gas station and the existing self-storage units, and to the south by Waits River Road.

---

[3] Four of the self-storage buildings are proposed to be thirty (30) feet wide and, from east to west as shown on Applicant's site plan, page 2 of 7 (Exhibit C), 155 feet in length, 170 feet in length, 180 feet in length and 250 feet in length, with double-sided access to the individual storage units. The most westerly self-storage building is proposed to be 20 feet wide and 280 feet in length, with single side access. In total, the Applicant proposes 178 individual self-storage units in the five buildings.

15. The Contractor Building is approximately the same height as the neighboring auto parts store and the self-storage buildings are designed to match the height and orientation of the existing, adjacent self-storage facility.

16. Vehicular access to the Property is via a 35-foot-wide access easement that passes over adjacent lands to the east (i.e., Tax Map # 9-57-284, Lot 1 of the Cairns subdivision, so-called), utilizing an existing curb cut.[4]

17. At trial, the Applicant proposed to modify its site plans to move the Contractor Building and its associated parking approximately 48 to 50 feet south to comply with the Town's maximum front setback requirement. In so doing, the Applicant would retain stormwater treatment on the south side of the Contractor Building, but moving the building and parking to the south would also create new green space to the north that may allow for additional stormwater treatment. No change is proposed to the location of the self-storage buildings.

18. There is some landscaping proposed at the southeast corner of the Property consisting of two maple, two hawthorn, and three pine trees.

19. As proposed, the Contractor Building and self-storage units will be situated so that the Contractor Building partially screens the self-storage units. The bay doors of both the Contractor Building and the self-storage units will face internally and will not be visible from the road.

20. The facades of the Contractor Building and the self-storage units will all employ metal paneling, with color variation (slate grey/blue), and some degree of faux stone skirting or veneer.[5]

21. All buildings will have pitched roofs.

22. The Contractor Building will also have an accent strip and five larger (5' x 5') windows on its southernly side (facing Waits River Road, with one window associated with each contractor bay). On the northerly (back) side of the Contractor Building, Applicant proposes small, covered roofs over the primary entrance doors for each bay.

23. The building designs do not incorporate any advertising elements or rooftop mechanical equipment.

24. There are no dormers or stepped roofs.

---

[4] This access may have been dictated by a prior Act 250 permit, but no such permit was admitted into evidence.

[5] The faux stone skirting will extend from the ground approximately 5 feet up the walls on the Contractor Building and will also be placed on the gable ends of the self-storage buildings facing the road.

25. The proposed materials and design elements are intended to incorporate or mimic New England vernacular architectural features.

26. The Contractor Building, which will have larger bays than the self-storage units, will be used by small service contractors and landscapers to park vehicles or trailers, store equipment/materials and "conduct business operations."[6]

27. No commercial operation/business activity is allowed to be run out of the self-storage buildings, which are intended primarily to meet the storage needs of homeowners and some businesses.[7]

28. Although the Town previously permitted self-storage in the Lower Plain zoning district under the 2005 Town of Bradford Zoning Bylaws, the regulations adopted December 12, 2019 (the 2019 Zoning Bylaws), in effect at the time of this application, do not list self-storage as an allowed use in the Lower Plain District.[8] Applicant's Exhibit B, Table 7.2.

29. The 2019 Zoning Bylaws provide that "[o]ther similar uses not listed above may be allowed as conditional uses upon a written determination by the Board of Adjustment that such use is of the same general character as those permitted and the use is not detrimental to other uses in the District as well as adjoining uses." Id.

30. "Repair/Service Facility" is an allowed use in the Lower Plain District, subject to site plan and conditional use approval. "Light Manufacturing," "Industrial" and "Rural Enterprise" are uses that are not allowed in the Lower Plain District.

31. Self-storage facilities are low traffic generators and no outdoor storage or obnoxious activity that adversely affects the reasonable use of adjoining property will be permitted.

32. Applicant submitted a similar application for site plan approval to the Town in 2022 that was denied and not appealed.[9] Applicant's Exhibit E. That 2022 application, for five, single-story self-

---

[6] The actual work of the service contractors will not occur in the Contractor Building's bays, which are intended more for the dry storage of materials and equipment. It is not entirely clear what other business operations may be conducted from the Contractor Building.

[7] Applicant represented that its lease agreement does not permit the conduct of business from self-storage units. No lease agreement was submitted into evidence.

[8] Contractor's yard is also not listed as an allowed use in the Lower Plain District.

[9] In its 2022 decision, the Bradford Planning Commission denied the application for failure to meet the maximum setback requirement of sixty feet, non-compliance with the minimum height requirement of 20 feet, and failure to comply

5

storage buildings, did not include the Contractor's Building. The application before the Court is the Applicant's attempt to better fulfill the requirements of the Zoning Bylaws in effect.

33. At the outset of trial, Applicant withdrew Question 5 of its (revised) Statement of Questions, filed March 19, 2025, which asked, in part, "Whether the Applicant's Application meets the standard for a variance pursuant to Section 6.5 as to the maximum front setback established pursuant to Section 7.0 of the Zoning Bylaws of the Town of Bradford." The Applicant indicated, instead, that it was prepared to meet the maximum front setback requirement and would prepare a revised site plan. However, no revised plan was submitted at trial.

34. In response to questions from the Court, Applicant indicated that it did not intend to withdraw that portion of Question 4 of its (revised) Statement of Questions that asks whether the Applicant's proposed use meets the standards to be granted a variance pursuant to section 6.5 of the 2019 Zoning Bylaws.

## Discussion

As a preliminary matter, Applicant's Question 6 asks whether Applicant is foreclosed from seeking approval on its application, by virtue of an unappealed 2022 Decision by the Bradford Planning Commission regarding site plan review for a similar self-storage facility. Pursuant to 24 V.S.A. §§ 4471 and 4472(a), the "exclusive remedy" for a party seeking to challenge a municipal act or decision, is to file a timely appeal in this Court. If an appeal is not taken, or is not taken in a timely manner, then the underlying act or decision becomes final and cannot be contested "directly or indirectly" in subsequent proceedings. 24 V.S.A. § 4472(d); see also Levy v. Town of St. Albans Zoning Bd. of Adjustment, 152 Vt. 139, 142 (1989).

In a decision dated July 21, 2022, the Bradford Planning Commission concluded that Applicant's application for five self-storage buildings did not meet the maximum front setback or minimum height requirements for the Lower Plain District. Additionally, the Planning Commission concluded that the structures did not comply with design review standards for the Lower Plain District. To the extent that Applicant's 2024 application maintains the same structural and design elements as its 2022 application, Applicant is precluded from challenging the Planning Commission's conclusions. Applicant, however, has added a new element to its 2024 application — the Contractor Building. Thus, we review Applicant's 2024 application, with particular focus on the Contractor

---

with design review standards in the Lower Plain District. The Planning Commission also denied Applicant's request(s) for a waiver or variance from the height requirement.

Building, for compliance with the Bradford Zoning Bylaws (the Zoning Bylaws). Any conclusions from the Planning Commission's 2022 Decision which are still applicable to the self-storage buildings shall be upheld as final and binding. We now turn to the merits of Applicant's 2024 application.

When interpreting a zoning ordinance, the Court applies the rules of statutory construction. In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262. First, we "construe the words according to their plain and ordinary meaning, giving effect to the whole and every party of the ordinance." Id. (citations omitted). In construing statutory or ordinance language, our paramount goal is to implement the intent of its drafters. Morin v. Essex Optical/The Hartford, 2005 VT 15, ¶ 7, 178 Vt. 29. We will therefore "adopt a construction that implements the ordinance's legislative purpose and, in any event, will apply common sense." In re Laberge Moto-Cross Track, 2011 VT 1, ¶ 8, 189 Vt. 578

Self-storage facilities are not listed as a permitted or conditional use in the Lower Plain District in which the Property is located. Zoning Bylaws Table 7.2. Nevertheless, a use not expressly listed in the Zoning Bylaws may be allowed as a conditional use if such use "is of the same general character as those permitted." Id. (notes). When construing such a provision, we apply the rule of *ejusdem generis* and interpret this general clause to include only things similar in character to those uses which are specifically defined.[10] Vermont Baptist Convention v. Burlington Zoning Bd., 159 Vt. 28, 30 (1992). We conclude that the proposed self-storage facility (including both the Contractor Building and the self-storage buildings) is not of the same general character as other uses permitted in the Lower Plain District.

Applicant argues that the Contractor Building is similar in character to a Repair/Service Facility, a conditional use in the District, and that the five self-storage buildings are similar to the Contractor Building. Thus, Applicant argues, the self-storage facility, taken as a whole, is eligible for conditional use review as an "other similar use." We disagree.

The Zoning Bylaws define Repair or Service Facility as:

> A business where the principal use is the repair or servicing of goods, including tailor, cobbler, etc. as well as the provision of a service such as hairdressing, health care, veterinary services, plumbing, electrical or rental of items. Not included in this definition are vehicle or large equipment repairs or gas stations.

---

[10] "The rule of Ejusdem generis is frequently applied by the courts in construing an enactment. When words of a statute bearing a specific description are followed by words of more general import, the sense of the adjective first used is applied to the words that follow. The latter words are held to include only those things similar in character to those specifically defined." Kalakowski v. John A. Russell Corp., 137 Vt. 219, 224, (1979).

Zoning Bylaws § [1].11.

Here, the proposed self-storage facility does not offer the repair or servicing of goods. Nor is passive self-storage akin to the personal services or trades listed in the above definition such as hairdressing, health care, or veterinary services. Applicant argues that the Contractor Building will be rented/utilized by those working in the service industry, which makes the Contractor Building similar to a Repair/Service facility. However, the identity/employment of hypothetical users of the self-storage facility is irrelevant to how we classify the proposed project. Put differently, while it is possible that plumbers or electricians may rent space in the Contractor Building to store materials, we do not view the provision of that storage space as being "of the same general character" as plumbing or electrical work. The use of the five self-storage buildings is even more dissimilar from a Repair/Service Facility than the already attenuated, dissimilar use of the Contractor Building.

Rather, the proposed self-storage facility is most similar to Light Manufacturing, which is a prohibited use in the Lower Plain District. The Zoning Bylaw defines Light Manufacturing as "[t]he research and development, assembly, processing and packaging of products, or storage and warehousing of materials or goods, conducted primarily within a building." Id. (emphasis added). This definition expressly contemplates storage of materials or goods within a building, which is precisely the purpose of a self-storage facility. Thus, the proposed project is most similar to a use which is prohibited in the Lower Plain District and cannot be permitted as a conditional use.[11]

In the alternative, Applicant further argues that it should be entitled to a use variance pursuant to Zoning Bylaws § 6.5. This argument fails for several reasons. First it is unclear whether this application was properly warned for consideration of a variance. See 24 V.S.A. § 4464 (requiring a warned public hearing for a variance request). The DRB's decision is entitled "Application #2024-38 for site plan and conditional use approval…" There is only a vague reference to a variance in paragraph (f) of the DRB's decision, leading the Court to conclude that a variance request was not properly warned for a hearing.

Furthermore, even if a variance were properly warned for a hearing, Applicant cannot demonstrate that it is entitled to a use variance. Applicant put on no evidence at trial demonstrating that it meets each of the five strict variance criteria set forth in the Zoning Bylaws § 6.5 and 24 V.S.A.

___

[11] Industrial and Rural Enterprise uses, both of which contemplate the potential for outside storage (whether unscreened or screened) are also prohibited in the Lower Plain District. Thus, read together, it appears that the Town, through its 2019 Zoning Bylaws, made an intentional choice to limit or prohibit storage uses, whether indoor or outdoor, in this District.

§ 4469. In re Mutschler, Canning & Wilkins, 2006 VT 43, ¶ 9 (recognizing that courts "do not distinguish between variances from use requirements and those from area requirements"). Most notably, Applicant cannot satisfy the third variance criteria, which requires that the undue hardship necessitating the need for a variance was not created by the Applicant. Zoning Bylaws § 6.5(c). Here, Applicant is only seeking to develop the Property for self-storage. Applicant has not shown that it is unable to develop the Property for any other type of use. Thus, the unnecessary hardship has been created by Applicant's desire to develop the Property strictly for self-storage. This cannot give rise to a variance. For all of these reasons, we answer Applicant's Question 4 in the negative.

Even if self-storage facilities were an allowed use within the Lower Plain District, Applicant concedes that the proposed project does not satisfy the maximum front setback requirement of 60 feet. At trial, Applicant attempted to modify the project by suggesting it would relocate the Contractor Building approximately 50 feet closer to Waits River Road. Applicant did not submit a revised site plan depicting this change, such that the Court could consider the impacts of the change on the remaining development. See In re Wright & Boester Conditional Use Application, 2021 VT 80, ¶ 22 (explaining that truly substantial changes to an application must be remanded to the DRB). Similarly, Applicant concedes that the five self-storage buildings do not meet the setback.[12] Thus, despite concluding that the use is not allowable in the Lower Plain District, Applicant has failed to demonstrate compliance with the maximum front setback.

Moreover, Applicant's proposed project does not satisfy the 20-foot minimum height requirement for new buildings the Lower Plain District. It is undisputed that the self-storage buildings are less than 20 feet, inclusive of the roofline. The table of dimensional requirements in Section 7.1 allows the waiver of certain dimensional requirements, but not for the height minimum requirements. Thus, there is no waiver provision or exception from the 20-foot building height minimum. Accordingly, even if the proposed project were allowed in the Lower Plain District, the project fails to meet the minimum height requirement.

---

[12] Applicant argues that the intent of the Zoning Bylaw is to only require that one principal building meet the front setback, and that other buildings can exceed the maximum front setback. The Court cannot find any support for this interpretation of the setback requirements. The front setback requirement does not distinguish one building from another. Nor is a waiver permitted from the front setback requirement in this district. Zoning Bylaw § 5.5 & Table 7.1. Even if it were, Applicant's Statement of Questions does not mention waiver, and thus this court lacks jurisdiction to consider that issue. Further, the proposed project does not fit any of the situations appropriate for a waiver of dimensional requirements laid out in Section 5.5 B, and Applicants have not presented any evidence on this issue. Absent clear and express language exempting additional buildings from the front setback requirement, we conclude that all proposed buildings in the Lower Plain district must meet the 60' maximum front setback.

Lastly, Applicant's Question 1 asks whether the proposed project satisfies the general design review standards set forth in Chapter 2 of the Zoning Bylaws. In reviewing these standards, we conclude that Applicant's proposed project fails to satisfy Zoning Bylaws § 2.17 ("Multiple Buildings on One Lot"). This provision expressly prohibits lots from having more than one principal building unless such buildings are positioned to be able to be subdivided into separate and individual lots.[13] Applicant did not demonstrate that the various proposed storage buildings are positioned such that the Property could be subdivided into individual lots. Nor has Applicant applied for approval of any of the self-storage buildings as accessory structures or proposed to develop the Property as a PUD. Thus, Applicant's proposed project plainly violates Zoning Bylaws § 2.17. Because the project violates this provision, we need not evaluate whether the project satisfies the remaining general design standards.

## Conclusion

For the foregoing reasons, we conclude that Applicant's proposed project is not an allowed use in the Lower Plain District. Even if it were an allowed use, the project fails to conform to basic dimensional requirements, including the 60' maximum front setback and 20' minimum building height requirements. The proposed project also includes a total of six buildings, which is prohibited by Section 2.17 of the Zoning Bylaws. For all these reasons, Applicant's application for a self-storage facility is **DENIED**.

This concludes the matter before the Court. A Judgment Order accompanies this Decision.

Electronically signed on September 15, 2025, pursuant to V.R.E.F. 9(d).

Joseph S. McLean
Superior Court Judge
Environmental Division

---

[13] The Zoning Bylaws do not define "Principal Building," but the term "Principal Structure" is defined as "The dominant structure in terms of use of a property, and not a structure that is typically an accessory structure. For example, a house is a principal structure and garage is an accessory structure to it. Under PUDs and other types of development, there may be more than one principal structure of these structures would typically be principle [sic] structures on a lot."